MELENIE VAN (SBN 335203)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 229-1355
Facsimile:  (415) 276-8959
Email: mvan@polsinelli.com

Ray L. Weber (To be admitted *pro hac vice*)
Laura J. Gentilcore (To be admitted *pro hac vice*)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone:  (330) 376-1242
Facsimile:   (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

Attorneys for Plaintiff
Daniel E. Grigson

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| DANIEL E. GRIGSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LOPEZ, an individual; KRISTEN ANDERSON-LOPEZ, an individual; THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; WALT DISNEY ANIMATION STUDIOS, a division of the Walt Disney Company; WALT DISNEY STUDIOS, a division of the Walt Disney Company; WALT DISNEY PICTURES, a California corporation; DISNEY DIGITAL STUDIOS SERVICES, a division of the Walt Disney Company; DISNEY MUSIC GROUP, a division of the Walt Disney Company; DISNEY+, a division of the Walt Disney Company; and JOHN DOES 1-10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## **JURISDICTION AND VENUE**

1.      This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 *et seq.*

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (actions arising under any Act of Congress relating to copyright).

3.      The Court has personal jurisdiction over each of the DEFENDANTS because one or more DEFENDANTS reside, have agents, do or transact business here, or are otherwise found, and have purposefully availed themselves of the privilege of doing business in California and this District, and the wrongful acts of DEFENDANTS took place, in whole or in part, in this District.

4.      Venue is proper in this District under 28 U.S.C. § 1400(a), because DEFENDANTS or their agents reside or may be found here.   Alternatively, under 28 U.S.C. § 1391(b)(2), this is a judicial District in which a substantial part of the events or omissions giving rise to the claim occurred.

## **PARTIES**

5.      Plaintiff, DANIEL E. GRIGSON ("GRIGSON"), is an individual residing at 2844 Ware Street, Blackshear, Georgia 31516.  By virtue of authorship (**EXHIBIT 1**) and assignment (**EXHIBIT 2**), GRIGSON is the owner of all right, title, and interest in the copyright in the musical composition entitled "That Girl."

6.      Upon information and belief, Defendant, ROBERT LOPEZ ("R LOPEZ"), is an individual doing business in and with the residents of California, including within this District.

7.      Upon information and belief, Defendant, KRISTEN ANDERSON-LOPEZ ("K A-LOPEZ") is an individual doing business in and with the residents of California, including within this District.

8.     Upon information and belief, Defendant THE WALT DISNEY COMPANY is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California, 91521, duly authorized to do and doing business in this District.

9.     Upon information and belief, Defendant, WALT DISNEY ANIMATION STUDIOS, is an animation studio and Defendant, WALT DISNEY PICTURES, is a film production studio.  Both are doing business in this District.  Both are subsidiaries of Defendant, WALT DISNEY STUDIOS.  Upon information and belief, WALT DISNEY STUDIOS is a fictitious name under which a division of Defendant, DISNEY ENTERPRISES, INC., operates.  DISNEY ENTERPRISES, INC. is a Delaware corporation authorized to do and doing business in this District.  DISNEY ENTERPRISES, INC., is a subsidiary of THE WALT DISNEY COMPANY.

10.     Upon information and belief, Defendant, DISNEY DIGITAL STUDIO SERVICES, specializes in digital production, post-production, marketing, and distribution workflows and is a subsidiary of THE WALT DISNEY COMPANY.

11.     Upon information and belief, Defendant, DISNEY MUSIC GROUP is a division of THE WALT DISNEY COMPANY which handled and continues to handle the soundtracks for FROZEN II.

12.     Upon information and belief, Defendant, DISNEY+, is the streaming home for entertainment from WALT DISNEY STUDIOS, operated by the Media and Entertainment Distribution division of THE WALT DISNEY COMPANY.

13.     To the extent that any business entity named as a Defendant herein is unincorporated, upon information and belief, its members reside within and/or do business within or with the residents of the District.

14.     Upon information and belief, THE WALT DISNEY COMPANY, acting through and in concert with its affiliated companies, DISNEY

ENTERPRISES, INC., WALT DISNEY ANIMATION STUDIOS, WALT DISNEY PICTURES, WALT DISNEY STUDIOS, DISNEY DIGITAL STUDIO SERVICES, DISNEY MUSIC GROUP and DISNEY+ ("AFFILIATED COMPANIES"), and one or more JOHN DOES produced, released, and distributed, and continue to reproduce and distribute, the film entitled FROZEN II, with the musical composition "Some Things Never Change" being performed within said film.

15.    The true names, conduct and capacities of DEFENDANTS sued as JOHN DOES 1 through 10, inclusive, are presently unknown to GRIGSON who, therefore sues these DEFENDANTS by such fictitious names.  GRIGSON will include the true names and capacities of these JOHN DOES when they are ascertained.  Each of the JOHN DOES is responsible in some manner, including, *inter alia,* as infringers, contributory infringers, and/or agents for the conduct alleged herein, and for the injuries suffered by GRIGSON.

16.    Upon information and belief, at all times mentioned herein, each DEFENDANT was an agent, partner, representative, affiliate, employee, and/or alter ego of every other DEFENDANT, and in doing the things alleged herein, was acting pursuant within the course and scope of such agency representation, affiliation, control or employment and was acting with the consent, permission and authorization of the other DEFENDANTS unless otherwise noted.

17.    Whenever this Complaint refers to any act or acts of a DEFENDANT, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of the responsible DEFENDANT authorized such act while actively engaged in the management, direction or control of the affairs of DEFENDANT, and each of them, and/or by persons who are the alter ego of DEFENDANTS, or while acting within the scope of their agency, affiliation, control or employment.  Whenever this Complaint refers to any act of

DEFENDANTS, the reference shall be deemed to be the act of DEFENDANTS, jointly and severally.

## BACKGROUND FACTS

18.    GRIGSON repeats and realleges Paragraphs 1 through 17 above as if fully rewritten.

19.    GRIGSON is a songwriter, performing artist, musician, and recording artist.  In 1996 he started Pelican Records.  In 1999 Pelican Records released the CD "Planet Necco" which included the track "That Girl," and which was available for streaming, download and purchase on mp3.com.  GRIGSON and Neal Bedford Bryant are the authors of the words and music for the song "That Girl."

20.    In 2000, GRIGSON applied for copyright registration (compact disc and lyrics sheets) for "Breakfast Songs, Vol. 1" which included the track "That Girl."

21.    In 2000, Pelican Records released the CD "Cinco de Necco: Musica Suave" which included the track "That Girl."

22.    In 2001, Pelican Records released "Blue Hair Day" which included the track "That Girl" and available in hard copy, download and streaming.  Also in 2001, "Blue Hair Day" was registered with SoundScan for public sale and distribution.

23.    Since 2001 through today, "Blue Hair Day," including "That Girl" has been available on dozens of music platforms including iTunes, Spotify, Apple Music, and Amazon Music.   Between 2001-2014, "That Girl" streamed on Trusonic/Mood Music commercial streaming platform more than 100,000 times.

24.    GRIGSON has a very public history of writing original music for and with children:

        a.  In 2007, GRIGSON started "The Environmental Club" youth group, which maintained a web site, Facebook, and YouTube page to share original music written for and with kids.

b. In 2008, lyrics for GRIGSON'S song "Trini" (recorded by kids) was used and reprinted with credit in a book released by Chicago's Shedd Aquarium.

c. Also in 2008, Pelican Records released "Voices," a CD of original music written for and with kids.  It remains available online for streaming, download and hard copy purchase.

d. In 2009, Pelican Records released "Do We Care?" This is a CD of original music written for and with kids.  It, also, remains available online for streaming, download and hard copy purchase.

e. In addition, in 2009, GRIGSON received the 2009 "SeaWorld and Busch Gardens Environmental Excellence Award" for his work writing, producing, releasing, and teaching kids through creating music. This is a national award with an Award Ceremony at SeaWorld in Florida, and it was covered in the news.

f. Also in 2009, GRIGSON started "The Maasai Music Project." For the first time ever, kids from the United States worked with kids in Africa to create original music together, a person-to-person collaboration across continents and cultures. This project continues to this day and has been publicly available online since its inception.  GRIGSON has returned to Africa three more times to continue the project which is promoted on Facebook, YouTube, and Instagram.

g. Between 2009-2014, GRIGSON, first through Pelican Records and thereafter Necco Records, produced live music performances featuring kids writing original songs.  Performances were streamed and promoted online, including on the websites www.neccorecords.com, www.neccosforbreakfast.com, and

COMPLAINT

www.maasaimusicproject.com, and social media.  In 2012, Necco Records released "Together, Pamoja, Tenebo," a CD of original music written for and with kids in the United States and Africa, which remains available online for streaming including on iTunes, Spotify, Apple Music and Amazon Music.  It is registered with Soundscan and remains available through major retailers such as Amazon and Target.com.

h. In 2016, GRIGSON started The Sprout Experience, an educational nonprofit with a mission to create and sustain immersive youth programs that encourage a love of learning, foster social/emotional growth, promote global citizenship, and have a long-lasting impact on the lives and learning of its students.  From 2016 through today, The Sprout Experience has traveled all around the world and country with kids.  Music is featured in every one of its programs.  It has maintained an active and public presence online, including on Facebook, Instagram, YouTube, Twitter, and its own website www.thesproutexperience.org.

i. In 2017, GRIGSON created The Sprout Experience "Songwriting Workshop."  GRIGSON works with kids to write, perform, and produce original music.  This program has maintained a public presence online, including details about the program, itself, GRIGSON'S credentials, and samples of his music.

25.    By virtue of his authorship (**EXHIBIT 1**) and assignment from Neal Bryant Bedford (**EXHIBIT 2**), GRIGSON is the sole owner of all right, title, and interest in the copyright for the musical composition entitled "That Girl."  The copyright in "That Girl" was registered with the United States Copyright Office on

or about January 18, 2000, and bears Registration No. PAu002489317. (**EXHIBIT 1**).

26.     Upon information and belief, R LOPEZ has publicly admitted he always loves to listen to other songs that could be useful to draw inspiration from and loves watching any kind of YouTube.  (**EXHIBIT 3**).

27.     R LOPEZ purports to be a co-author of the song "Some Things Never Change" from the animated feature film FROZEN II. (**EXHIBIT 4**).

28.     K A-LOPEZ purports to be a co-author of the song "Some Things Never Change" from the animated feature film FROZEN II.  (**EXHIBIT 4**).

29.     Upon information and belief, R LOPEZ and K A-LOPEZ wrote the musical composition "Some Things Never Change" at the direction of or in concert with THE WALT DISNEY COMPANY, and/or its AFFILIATED COMPANIES, and one or more JOHN DOES.

30.     Upon information and belief, the musical composition Some Things Never Change" was a work for hire by R LOPEZ and K A-LOPEZ for THE WALT DISNEY COMPANY or one of its AFFILIATED COMPANIES, or R. LOPEZ and K A-LOPEZ either directly or indirectly through one or more JOHN DOES, assigned ownership rights or licensed performance rights to the song "Some Things Never Change" to, THE WALT DISNEY COMPANY and/or one or more of its AFFILIATED COMPANIES, either directly or through a JOHN DOE.

31.     The song "Some Things Never Change" was performed in FROZEN II at the direction of THE WALT DISNEY COMPANY and/or one or more of its AFFILIATED COMPANIES and JOHN DOES.

32.     Upon information and belief, THE WALT DISNEY COMPANY, WALT DISNEY ANIMATION STUDIOS, WALT DISNEY PICTURES and WALT DISNEY STUDIOS, or other of its AFFILIATED COMPANIES, and one or more JOHN DOES, produced, released, and distributed the film FROZEN II.

33.     Upon information and belief, the film FROZEN II was released in theaters across the United States on November 27, 2019.

34.     Upon information and belief, the film FROZEN II became available on DVD and Blu-ray from THE WALT DISNEY COMPANY, through DISNEY DIGITAL STUDIO SERVICES or other of its AFFILIATED COMPANIES and JOHN DOES, on or about February 25, 2020, and continues to be so available.

35.     The film FROZEN II also has been and continues to be available for streaming from THE WALT DISNEY COMPANY through DISNEY+ and other platforms.

36.     Upon information and belief, THE WALT DISNEY COMPANY, through DISNEY MUSIC GROUP or other of its AFFILIATED COMPANIES, and JOHN DOES, has produced, released and distributed related soundtracks which continue to be available for download on multiple platforms, including but not exclusively on www.kidsmusics.com, www.music.apple.com, and www.download-soundtracks.com.

37.     GRIGSON first heard the song "Some Things Never Change" while attending the film FROZEN II during the week after its release on November 27, 2019.  As the song was being performed, he involuntarily stood straight up, turned to look at his wife, and then at his kids, his eyes wide open as saucers. The close similarity to his own work "That Girl" was so striking to him that it caught him off guard, the beat, rhythm, feel, theme, words.  He sat back down with his head in his hands.  His 11-year-old daughter leaned over to him and said "Dad, Disney took your song."

38.     Shortly thereafter, GRIGSON put audio files for both songs into his computer to analyze them further.   He located a version of "Some Things Never Change" with music only, and he transposed "That Girl" down 2 steps to match keys.

He did not alter anything else. Not the rhythm. Not the tempo. Not the chords. Nothing was added.  To him, the musical similarity was striking.

39.    GRIGSON also found similarity in the structure and lyrics.

40.    Based upon GRIGSON'S findings, an experienced forensic musicologist, Dr. Robert Tomaro, a symphonic conductor, trained in the areas of classical, popular, and commercial music, with experience in the techniques of the recording studio and in recorded music, as well as in guitar performance as a professional guitarist, was retained to perform a comparative analysis of "That Girl" versus "Some Things Never Change."

41.    Preliminary and further analyses were undertaken using several methodologies:   Recording Analysis (which involves the identification and differentiation between two recorded works in terms of melody, harmony, and/or digital signals, in the exact from in which they were recorded), Compositional Analysis (in which similarity is established by a reductive approach), a Temporal or Timeline Analysis (in which songs are mapped as a timeline, and important lyrical and structural elements are cited compared and explained), and an Audio Analysis.

42.    Forensic musicologist, Dr. Tomaro, found eight significant similarities shared by "That Girl" and "Some Things Never Change" in the following areas: melodies and melodic structure; musical forms and musical gestures; rhythm sections parts; tempos; chord progressions; cadences at the end of the choruses; lyrics; and arrangements and lyrical structures.

43.    A temporal or timeline comparison of similarities in the lyrics and in the forms of the arrangements in both songs shows that:

      a. Each chorus has the same or similar words that appear in the same order in each chorus.  Below is a comparison of the three lines that are repeated in each song in each chorus.  These are the main chorus lines, the main theme of each song, the most memorable and important lyric

of each song including the first and the last (resolution) line of each chorus.

| "That Girl" | "Some Things Never Change" |
|---|---|
| some people never change<br>but inside they're still the same<br>some people never change | some things never change<br>Some things stay the same<br>Some things never change |

b. "That Girl" and "Some Things Never Change" have identical song structure in terms of arrangement of sections. Below, similar lyrics, set in similar structural forms, are outlined in color. Both songs exhibit the identical arrangement of the various sections, from placement of the "intro" through placement of the "chorus" and placement of the ending or "outro" of the songs.

c. Seen below is a side-by-side comparison of the timelines of the lyrical structures of both recordings. The similarity in the structure of both songs was opined by forensic musicologist, Dr. Tomaro, to be significant because:

    *i.* the structure is quite complex and unusual for a pop song because pop songs generally follow simpler patterns, such as "verse, chorus, bridge, verse chorus, verse chorus, ending;" and

    *ii.* the arrangement of the sections in both songs follows a unique pattern, yet one that is identical.

| "That Girl" | "Some Things Never Change" |
|---|---|
| MUSIC INTRO<br>VERSE<br>CHORUS | MUSIC INTRO<br>VERSE<br>CHORUS |

11

| | |
|---|---|
| VERSE<br>CHORUS<br>BRIDGE PT 1<br>BRIDGE PT 2<br>CHORUS<br>OUTRO | VERSE<br>CHORUS<br>BRIDGE PT 1<br>BRIDGE PT 2<br>CHORUS<br>OUTRO |
| **"That Girl"**<br><br>**MUSIC INTRO**<br><br>**VERSE**<br>i remember that girl, she was my best friend<br>she would always have my back<br>she'd be there for me as long as there was a me, a statement so true it's a fact<br><br>of course i knew all about her & her friends<br>relationships that died in the past<br>but she'd be there for me as long as there was a me, this was different it would last<br><br>**CHORUS**<br>some people never change<br>they put on a different mask or cut their hair or get contacts<br>but inside they're still the same<br>some people never change<br><br>**VERSE**<br>that girl played it up good,<br>she really kept it up<br>she must have had a really good time<br>she'd be there for me<br>as long as there was a me<br>a statement that's not worth a dime<br>Whistle...<br><br>**CHORUS**<br>some people never change<br>they put on new perfume<br>or buy new clothes | **"Some Things Never Change"**<br><br>**MUSIC INTRO**<br><br>**VERSE**<br>Yes, the wind blows a little bit colder<br>And we're all getting older<br>And the clouds are moving on<br>with every autumn breeze<br><br>Peter Pumpkin just became fertilizer<br>And my leaf's a little sadder and wiser<br>That's why I rely on certain certainties<br>[instrumental]<br><br>**CHORUS**<br>Yes, some things never change<br>Like the feel of your hand in mine<br>Some things stay the same<br>Like how we get along just fine<br>Like an old stone wall that'll never fall<br>Some things are always true<br>Some things never change<br>Like how I'm holding on tight to you<br><br>**VERSE**<br>The leaves are already falling<br>Sven, it feels like the future is calling<br>Are you telling me tonight you're gonna get down on one knee? Yeah bud,<br>I'm really bad at planning these things out<br>Like candlelight and pulling of rings out<br>Maybe you should leave all the romantic stuff to me<br><br>**CHORUS**<br>Yes, some things never change<br>Like the love that I feel for her<br>Some things stay the same |

| | |
|---|---|
| and lie to you<br>**but inside they're still the same**<br>**some people never change** | Like how reindeers are easier<br>But if I commit and I go for it<br>I'll know what to say and do Right?<br>**Some things never change**<br>Sven, the pressure is all on you |
| **BRIDGE PT 1**<br>when they lie to you<br>and fill your head with dreams<br>when they comfort you<br>with words of polyurethane<br>when they won't look at you,<br>their eyes will tell it all<br>when all these words ring true,<br>get ready for a fall | **BRIDGE PT 1**<br>The winds are restless<br>Could that be why I'm hearing this call?<br>Is something coming?<br>I'm not sure I want things to change at all<br>These days are precious<br>Can't let them slip away<br>I can't freeze this moment<br>But I can still go out and seize this day |
| **BRIDGE PT 2**<br>in a different place<br>in a different time<br>maybe it could've worked out<br>but i really think<br>it's better this way<br>she's a problem child i can do without<br>i should've listened<br>to what people had to say<br>it could've been so easy<br>but i had to learn the hard way that | **BRIDGE PT 2**<br>The wind blows a little bit colder<br>And you all look a little bit older<br>It's time to count our blessings<br>Beneath an autumn sky<br>We're always living the kingdom aplenty<br>That stands for the good of the many<br>And I promise you the flag of Arendelle<br>will always fly<br>Our flag will always fly<br>Our flag will always fly<br>Our flag will always fly |
| **CHORUS**<br>**some people never change**<br>they can laugh awhile or sing to you or fake a smile<br>**but inside they're still the same**<br>**some people never change** | **CHORUS**<br>**some things never change**<br>Turn around and the time has flown<br>**Some things stay the same**<br>Though the future remains unknown<br>May our good luck last, May our past be past<br>Time's moving fast, it's true<br>**Some things never change**<br>And I'm holding on tight to you |
| **OUTRO**<br>some people never change<br>some people never change<br>some people never change<br>Does that seem strange? | **OUTRO**<br>Holding on tight to you<br>Holding on tight to you<br>Holding on tight to you<br>I'm holding on tight to you |

44.    Forensic musicologist, Dr. Tomaro, found:

a.  both songs follow the same rhythm, beat and tempo, especially noted in the nearly identical acoustic guitar underlying the majority of both songs;

b.  The similarity is most apparent during the quiet parts of the songs; and

c.  Comparing corresponding clips from the two songs compiled by GRIGSON, the tempo and rhythm are so similar they kept time and rhythm without alterations.

45.    A further analysis of the opening bars of both songs was had by forensic musicologist, Dr. Tomaro.   For that analysis the key of "Some Things Never Change" was transposed from C Major to G Major, the key in which "That Girl" is performed.  It showed as follows:

a.  The tempos of both songs are identical. Quarter note = 92 BPM;

b.  The chord progressions in the choruses of both songs are very similar.  In "That Girl," the second chord of the progressions is Em.  In "Some Things Never Change", it is Am;

c.  In "That Girl" the final chord in the phrase appears as C/D and sometimes D.  In "Some Things Never Change," it is D7sus. Although the chords are different, they are both variations on a D chord and serve the function of a "5 Chord;"

d.  Both chord progressions exhibit a similar harmonic movement and provide a similar harmonic background for the vocal melody that is sung over the progression; and

e.  The similarities found in the opening bars of the choruses of both "That Girl" and "Some Things Never Change" are seen

below, with the meaning of the circled notes being as explained below.

    *i.*    The major melodic figure in the first of the chorus to both songs is strikingly similar.  They both follow a pattern of the same descending notes, beginning on B and descending down to D, which is identified by the circled numbers in the excerpts to both excerpts as follows:

        Circle 1 – B

        Circle 2 – B is repeated

        Circle 3 – G

        Circle 4 – D

    *ii.*    In the second bar of the chorus of both songs, the melodic statement that began in the first bar is completed.  In "That Girl," the phrase takes the form of a descending line, beginning on B and descending down to D, as follows:

        Circle 5 – B

        Circle 6 – A

        Circle 7 – G

        Circle 8 – D

    *iii.*    In the second half of the same bar in the chorus of "Some Things Never Change," however, this phrase is inverted; that is, it is played upside down, but comprises the same melodic material.  It is transformed into:  G…A…B…D, as follows:

        Circle 5 – G

Circle 6 – A

Circle 7 – B

Circle 8 – D



46.    Further analysis of both songs shows that a similar cadence occurs simultaneously in both at the same point in their respective recordings, and that other striking similarities exist in both cadences, as well.   In the exhibit below, these similarities are identified in the excerpts to both songs as Circled numbers 1 through 5.

          a.   There is a pause in the vocal melody of each song in the cadence.

                *i.*   Circle 1 - In the penultimate measure of both choruses, the vocal melody pauses on beat 4 of both songs, as is identified in both excerpts below and marked as Circle 1. In "That Girl", there is a pause after the lyric "same". The vocal line stops for 2 V2 beats before going on.

Those beats are marked by a quarter note rest on beat 4, following by a dotted quarter note rest at the beginning of the following bar.  Similarly, in "Some Things Never Change", the vocal line pauses on the last 16th note of the measure on the word "change", also marked by a circle 1. The note is held into the following bar. As in "That Girl", the pause lasts for just over one beat.

  ii. Circle 2 - Coinciding with the pauses at the end of the bars in both songs, the instrumental accompaniment also pauses, and a chord is struck and held for a full bar in both songs, marked by circle 2 in both excerpts.  In "That Girl", this gesture is marked by a whole note at the beginning of the bar on a C major chord.  In "Some Things Never Change", it is marked by D major chord and a whole note also on beat one of the next bar, and also identified by circle 2.

  iii. Circle 3 - In the second bar of both excerpts below, the vocal lines in both songs reenter just after beat one at the same time.  In "That Girl", the vocal entrance is on the last half of beat one on the word "some", marked by circle 3.  In "Some Things Never Change", the vocal line also reenters on the second half of beat 1, on the word "like", and is also marked by circle 3.

 b. There are similarities in the melodies in the cadences of both songs.

COMPLAINT

i. Circles 4 and 5 - The melodies in the vocal lines in both songs exhibit striking similarities in the second half of both the second bars of the cadence. The primary emphasis in both melodic lines occurs on beat 3 in both songs, on the note B, and is identified below in circle 4. Then on beat 4, the melody in both songs moves to the note G and is identified by circle 5 in both song excerpts below.

c. These cadential passages are a unique and catchy feature of both songs, and the fact that both songs share five distinct similarities at the same place and in the space of a brief, two bar phrase, it is opined by forensic musicologist, Dr. Tomaro, as significant.



47. A further reductive analysis of the depiction of the central melodies (or hooks) of both songs was had, in which the passing tones, rests and rhythmic

18

anomalies in the scores were removed to highlight significant similarities.   It revealed:

    a. The musical elements in the melodies of both songs are not only similar in themselves, they are also linked to lyrics that are similar in both songs and that appear in the same context in both songs;

    b. A similar lyrical phrase is found in the chorus of both songs, differing only in the use of the two words "people" and "things," that is "people" is sung in "That Girl" and "things" is sung in "Some Things Never Change;"

    c. There is a three-note rhythmic pattern which appears in the same place in both songs, structured as a 16th note, followed by an 8th note, followed by a 16th note.  This central motive (or hook) to both songs is then repeated through the songs;

    d. A variation of this phrase is then repeated in both songs, and it also contains similarities, both phrases again begin with the note B, the rhythmic figure that occurred previously is now changed to a new rhythmic pattern, 8th note, 16th note, 16th note, and both phrases end on the phrase "the same," which rhymes with "change" from the first phrase of the hook;

    e. At the end of the chorus in Some Things Never Change," there is a cadence, during which the instrumental accompaniment stops and a short vocal phrase is sung.  This melodic gesture is similar to the cadence found at the end of the chorus in "That Girl."  In "That Girl," the melody is not sung but played as a guitar solo;

19

f.  The cadence in "That Girl" has several melodic events appearing in a particular order.  Those melodic events appear in a similar way in the cadence in the end of chorus in "Some Things Never Change;"

g.  The rhythm section parts in the recordings of "That Girl" and "Some Things Never Change" also contain similarities.  The chord progressions of both songs are quite similar; both chord progressions exhibit a similar harmonic movement and provide a similar harmonic base for the vocal melody that is sung over the progression; and

h.  The rhythmic structure of the acoustic guitar parts in both songs are identical; the bass parts are quite similar; the drum parts are quite similar; the tempos of both songs are identical (quarter note =92 BPM); and beats 1 and 3 in both recordings are accented by the rhythm section which creates a 'bouncy' folk rock style pulse that supports the mood of the song and the theme of the lyrics.

48.  When excerpts from "That Girl" are played back-to-back with corresponding excerpts from "Some Thing Never Change" and, at times, excerpts from "That Girl" and "Some Things Never Change" are played simultaneously, audible evidence of the similarities in the melodies, chord progressions, and the rhythm section parts of both songs can be heard at the end of the choruses in both songs.

49.  Given the forgoing, the similarities in the songs are so striking that they can only be explained by copying, as opined by the forensic musicologist.

50.  DEFENDANTS, and each of them, by way of the conduct set forth herein, have infringed, and continue to infringe, GRIGSON'S rights in both the

musical composition and sound recording of "That Girl" as set forth in the Counts below.

## COUNT I—DIRECT COPYRIGHT INFRINGEMENT—COMMON ALLEGATIONS

51.    GRIGSON repeats the allegations set forth in paragraphs 1 through 50 above as if fully rewritten.

52.    GRIGSON is an author and sole owner of the copyright in the song "That Girl."

53.    "That Girl" is an original work of authorship fixed in a tangible means of expression, and as such is subject to protection under the Copyright Act 17 U.S.C. § 102(a)(2).

54.    R LOPEZ and K A-LOPEZ had an ongoing and continuous opportunity of access to "That Girl" prior to the infringement alleged herein.

55.    R LOPEZ and K A-LOPEZ had a reasonable possibility to access "That Girl" though radio play, online, download and/or streaming, particularly but not exclusively, through YouTube.

56.    The striking similarities between "That Girl" and "Some Things Never Change' also establish a possibility of access.

57.    Upon information and belief, R LOPEZ had access to "That Girl."

58.    R LOPEZ admits to listening to YouTube for inspiration, a venue on which "That Girl" was available prior to the infringement alleged herein.

59.    R LOPEZ and/or K A-LOPEZ would have been motivated to listen to "That Girl" given GRIGSON'S very public history of writing original music for and with children, as well as the availability of "That Girl" prior to the infringement alleged herein.

60.    At all times relevant, R LOPEZ s' conduct has been and continues to be knowing, willful, and with complete disregard to GRIGSON'S rights.

## COUNT II—RIGHT TO REPRODUCE THE MUSICAL COMPOSITION

61.    GRIGSON repeats the allegations set forth in paragraphs 1 through 60 above as if fully rewritten.

62.    The musical work, "That Girl," is an original work of authorship under 17 U.S.C. § 102(a)(2), for which GRIGSON is an author and sole owner of the copyright.

63.    As sole owner of the copyright in the musical work "That Girl," GRIGSON has the exclusive right under 17 U.S.C. § 106(1) to reproduce "That Girl," and authorize its reproduction, and be compensated for reproductions.

64.    R LOPEZ and K A-LOPEZ copied substantial qualitative and quantitative portions of the musical composition "That Girl" in creating the infringing song "Some Things Never Change."

65.    R LOPEZ and K A-LOPEZ did not seek or receive GRIGSON'S consent or authorization to copy, sample, reproduce or interpolate any portion of the musical composition "That Girl."   GRIGSON has never licensed or otherwise authorized any DEFENDANT to reproduce "That Girl," or create derivative works based upon it.   Nonetheless, "Some Things Never Change" incorporates and includes substantial and material portions of "That Girl."

66.    R LOPEZ AND K A-LOPEZ have violated GRIGSON'S exclusive right to reproduce the musical composition "That Girl" by reproducing it without GRIGSON'S consent, license or permission, and without his being compensated, in violation of Federal Copyright Law, with the result being damage to GRIGSON.

67.    At all times relevant, R LOPEZ'S conduct has been and continues to be knowing, willful, and with complete disregard of GRIGSON'S rights.

68.   THE WALT DISNEY COMPANY and its AFFILIATED COMPANIES and JOHN DOES since November 27, 2019 have continuously and repeatedly infringed, and are presently infringing, GRIGSON'S exclusive right under 17 U.S.C. § 106(1) to reproduce the musical composition "That Girl" by reproducing and thereafter selling, broadcasting, streaming, licensing and otherwise exploiting and monetizing the song "Some Things Never change" without the consent, license or permission of GRIGSON, with GRIGSON being damaged as the result.

## COUNT III—RIGHT TO PREPARE DERIVATIVE WORKS OF THE MUSICAL COMPOSITION

69.   GRIGSON repeats the allegations set forth in paragraphs 1 through 68 above as if fully rewritten.

70.   As the sole copyright owner of the musical composition "That Girl," GRIGSON has the exclusive right to prepare derivative works and be compensated for derivative works made from the musical work "That Girl" under 17 U.S.C. § 106(2).

71.   R LOPEZ and K A-LOPEZ copied substantial qualitative and quantitative portions of the musical composition "That Girl" in creating the infringing song "Some Things Never Change."

72.   R LOPEZ and K A-LOPEZ did not seek or receive GRIGSON'S consent or authorization to copy, sample, reproduce or interpolate any portion of the musical composition "That Girl."   GRIGSON has never licensed or otherwise authorized any DEFENDANT to create derivative works based upon it. Nonetheless, "Some Things Never Change" incorporates and includes substantial and material portions of "That Girl."

73.     R LOPEZ AND K A-LOPEZ have violated GRIGSON'S exclusive right to prepare derivative works without his consent, license, or permission, and without his being compensated in violation of Federal Copyright Law, and GRIGSON has been damaged as a result.

74.     THE WALT DISNEY COMPANY and its AFFILIATED COMPANIES and JOHN DOES have continuously and repeatedly infringed, and are presently infringing, GRIGSON'S exclusive right to make derivative works from the musical composition "That Girl" under 17 U.S.C. § 106(2) by selling, broadcasting, streaming, licensing and otherwise exploiting and monetizing the song "Some Things Never change" without the consent, license, license or permission of GRIGSON, with GRIGSON being damaged as the result.

## COUNT IV—RIGHT TO DISTRIBUTE THE MUSICAL COMPOSITION

75.     GRIGSON repeats the allegations set forth in paragraphs 1 through 74 above as if fully rewritten.

76.     As the sole copyright owner of the musical composition "That Girl," GRIGSON has the exclusive right to distribute it and be compensated for its distribution under 17 U.S.C. § 106(3).

77.     R LOPEZ and K A-LOPEZ have infringed the musical composition "That Girl" in producing the song "Some Things Never Change" for, or assigning the rights to, or licensing the song "Some Things Never Change" for performance to THE WALT DISNEY COMPANY and/or its Affiliated Companies, whether directly or indirectly through JOHN DOES in violation of  GRIGSON'S exclusive right to distribute the musical work "That Girl" under 17 U.S.C. § 106(3).

78.     THE WALT DISNEY COMPANY and its AFFILIATED COMPANIES and JOHN DOES have continuously and repeatedly infringed, and are presently infringing, GRIGSON'S exclusive right to distribute the musical

composition "That Girl" under 17 U.S.C. 106(3) by selling, broadcasting, streaming, licensing and otherwise exploiting and monetizing the song "Some Things Never Change" without the consent, license, or permission of GRIGSON, with GRIGSON being damaged as the result.

## COUNT V—RIGHT TO PUBLICLY PERFORM THE MUSICAL COMPOSITION

79.    GRIGSON repeats the allegations set forth in paragraphs 1 through 78 above as if fully rewritten.

80.    As the sole copyright owner of the musical composition, "That Girl," GRIGSON has the exclusive right to publicly perform the musical work "That Girl" and be compensated for its public performance under 17 U.S.C. § 106(4).

81.    DEFENDANTS have performed and continue to perform "Some Things Never Change," thereby violating GRIGSON'S exclusive right to publicly perform the musical work "That Girl," without his consent, license or permission, and without his being compensated in violation of Federal Copyright Law, to the damage of GRIGSON.

## COUNT VI—RIGHT TO REPRODUCE THE SOUND RECORDING

82.    GRIGSON repeats the allegations set forth in paragraphs 1 through 81 above as if fully rewritten.

83.    As the sole owner of the sound recording "That Girl," GRIGSON had the exclusive right to turn that musical composition to a sound recording. DEFENDANTS did this without GRIGSON'S permission or licenses.

84.    Further, while it is not known if the actual sounds from "That Girl" are used in the song "Some Things Never Change," certain sounds were re-recorded or re-played from the GRIGSON'S song into DEFENDANTS' song.

85.     As the owner of the sound recording, GRIGSON has the exclusive right to reproduce, and be compensated for, the sound recordings per 17 U.S.C. § 106(1).

86.     DEFENDANTS have violated GRIGSON'S exclusive right to reproduce the sound recording without his consent, license or permission without being compensated in violation of Federal law, and GRIGSON has been damaged as a result.

### COUNT VII—RIGHT TO DISTRIBUTE THE SOUND RECORDING

87.     GRIGSON repeats the allegations set forth in paragraphs 1 through 86 above as if fully rewritten.

88.     As the sole owner of the sound recording "That Girl," GRIGSON had the exclusive right to turn that musical composition to a sound recording. DEFENDANTS did this without GRIGSON'S permission or licenses.

89.     Further, while it is not known if the actual sounds from "That Girl" are used in the song "Some Things Never Change," certain sounds were re-recorded or re-played from the GRIGSON'S song into DEFENDANTS' song.

90.     As the owner of the sound recording, GRIGSON has the exclusive right to distribute, and be compensated for, the sound recordings per 17 U.S.C. § 106(3).

91.     DEFENDANTS have violated GRIGSON'S exclusive right to distribute the sound recording without his consent, license or permission without being compensated in violation of Federal law, and Plaintiff has been damaged as a result.

### COUNT XVIII—RIGHT TO PREPARE DERIVATIVE WORKS OF THE SOUND RECORDING

92.     GRIGSON repeats the allegations set forth in paragraphs 1 through 91 above as if fully rewritten.

26

COMPLAINT

93.     As the sole owner of the sound recording "That Girl," GRIGSON had the exclusive right to turn that musical composition to a sound recording. DEFENDANTS did this without GRIGSON'S permission or licenses.

94.     Further, while it is not known if the actual sounds from "That Girl" are used in the song "Some Things Never Change," certain sounds were re-recorded or re-played from the GRIGSON'S song into DEFENDANTS' song.

95.     As the owner of the sound recording, GRIGSON has the exclusive right to prepare derivative works, and be compensated for, of the sound recordings per 17 U.S.C. § 106(2).

96.     DEFENDANTS violated GRIGSON'S exclusive right to prepare derivative works of the sound recording without his consent, license or permission without being compensated in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT IX—RIGHT TO PUBLICLY PERFORM THE SOUND RECORDING

97.     GRIGSON repeats the allegations set forth in paragraphs 1 through 96 above as if fully rewritten.

98.     As the sole owner of the sound recording "That Girl," GRIGSON had the exclusive right to turn that musical composition to a sound recording. DEFENDANTS did this without GRIGSON'S permission or licenses.

99.     Further, while it is not known if the actual sounds from "That Girl" are used in the song "Some Things Never Change," certain sounds were re-recorded or re-played from the GRIGSON'S song into DEFENDANTS' song.

100.    As the owner of the sound recording, GRIGSON has the exclusive right to publicly perform, and be compensated for, of the sound recordings per 17 U.S.C. § 106(6).

101. DEFENDANTS violated GRIGSON'S exclusive right to publicly perform, and be compensated from, the sound recording without his consent, license or permission without being compensated in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT IIX—INDIRECT INFRINGEMENT

102. GRIGSON repeats the allegations set forth in paragraphs 1 through 101 above as if fully rewritten.

103. DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED COMPANIES, individually and collectively, induced, caused. and assisted in the direct infringement by R LOPEZ and/or K A-LOPEZ of the musical composition and/or sound recording of "That Girl," and as such, are contributorily liable for copyright infringement in connection with the unauthorized exploitation of "That Girl."

104. DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED COMPANIES, individually and collectively, knew or had reason to know at least based on the public statement of R LOPEZ that he listened to YouTube for inspiration, and/or acted with reckless indifference as to whether their own conduct and/or that of third parties, constituted copyright infringement, and therefore materially contributed to and otherwise facilitated the unauthorized exploitation of "That Girl" and the creation and monetization of "Some Things Never Change."

105. DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED COMPANIES, individually and collectively, through their inducement, causation and assistance in the direct copyright infringement alleged herein, have profited, and continue to profit.

106. DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED COMPANIES, individually and collectively, through their

1 inducement, causation and assistance in the direct copyright infringement alleged

2 herein has caused actual damage to GRIGSON while profiting.

3     107. Due to the acts of direct and indirect copyright infringement of

4 DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED

5 COMPANIES, individually and collectively, as alleged herein, GRIGSON has

6 suffered general and special damages, including without limitation, lost profits,

7 royalties, license fees, and other revenues, in an amount to be established at trial.

8     108. Due to the acts of copyright infringement as alleged herein

9 DEFENDANTS, THE WALT DISNEY COMPANY, and its AFFILIATED

10 COMPANIES, individually and collectively, have obtained direct and indirect

11 profits they would not otherwise have realized but for their infringement of

12 GRIGSON'S rights in the song "That Girl."  As such, GRIGSON is entitled to

13 disgorgement of the profits of DEFENDANTS, THE WALT DISNEY COMPANY,

14 and its AFFILIATED COMPANIES, directly and indirectly attributable to

15 DEFENDANTS' direct infringement of GRIGSON'S rights in the song "That Girl"

16 in an amount to be established at trial.

17     109. The wrongful conduct of DEFENDANTS, individually and

18 collectively, as alleged herein, is causing and, unless enjoined by this Court, will

19 continue to cause GRIGSON irreparable injury that cannot be fully compensated or

20 measured in monetary terms.  Pursuant to 17 U.S.C. § 502, GRIGSON is entitled to

21 a permanent injunction prohibiting the reproduction, distribution, sale, public

22 performance or other use or exploitation of the song "Some Things Never Change."

23     110. The wrongful conduct of DEFENDANTS, individually and

24 collectively, as alleged herein, has caused GRIGSON monetary damages including

25 but not exclusively lost revenues, lost profits, royalties, license fees, and other

26 revenues in an amount to be established at trial.

27

28

111.   The wrongful conduct of DEFENDANTS, individually and collectively, as alleged herein, is willful and/or with reckless disregard, entitling GRIGSON to seek enhanced damages, such as statutory damages of up to One Hundred Fifty Thousand Dollars ($150,000.00) and/or to preclude DEFENDANTS from proffering certain affirmative defenses and legal positions.

112.   Accordingly, GRIGSON is entitled to an award against DEFENDANTS, individually and collectively, for recovery of DEFENDANTS' profits, GRIGSON'S actual damages or statutory damages, punitive damages, reasonable attorneys' fees and costs, pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

**WHEREFORE,** GRIGSON respectfully prays for judgment against all DEFENDANTS, and each of them individually, as follows:

A.   A declaration that DEFENDANTS have infringed GRIGSON'S exclusive rights in the song "That Girl," in violation of the Copyright Act, 17 U.S.C. §§ 106(1), (2), (3), (4) and (6), and 501(a);

B   A declaration that DEFENDANTS R LOPEZ and K A-LOPEZ are directly liable to GRIGSON for copyright infringement.

C.   A declaration that DEFENDANTS THE WALT DISNEY COMPANY and one or more of its AFFILIATED COMPANIES as applicable are directly liable to GRIGSON for copyright infringement.

D.   A declaration that DEFENDANTS THE WALT DISNEY COMPANY and one or more of its AFFILIATED COMPANIES as applicable are jointly liable to GRIGSON for copyright infringement.

E.   A declaration that DEFENDANTS THE WALT DISNEY COMPANY and one or more of its AFFILIATED COMPANIES as applicable are contributorily liable to GRIGSON for copyright infringement.

F.     A permanent injunction requiring DEFENDANTS and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of GRIGSON'S rights protected by the Copyright Act (17 U.S.C. § 502);

G.     For a constructive trust to be entered over any films, recordings, products, files, online programs, and other material, and all revenues resulting from the exploitation of same, for the benefit of GRIGSON;

H.     For an accounting of all profits derived from DEFENDANTS' exploitation of "That Girl;"

I.     For either the actual damages sustained by GRIGSON and any additional profits had by DEFENDANTS (17 U.S.C. § 504(a)(1) and (b)); or at GRIGSON'S election before final judgment (i) a finding that the infringement was willful, (ii) an award of statutory damages under 17 U.S.C. § 504(c)(1) and (2) in the increased amount of $150,000 as to each DEFENDANT found to be liable individually to GRIGSON for copyright infringement, and (iii) an award of statutory damages under 17 U.S.C. § 504(c) in the increased amount of $150,000  as to any two or more DEFENDANTS found to be liable jointly and severally to GRIGSON for copyright infringement;

J.     For pre-judgment and post-judgment interest;

K.     For costs, with reasonable attorney fees awarded therewith, under 17 U.S.C. § 505; and

L.     For such other and further relief as to this Court seems just and proper.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

GRIGSON demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Dated:  November 1, 2022          Respectfully submitted,


/s/ *Melenie Van*
Melenie Van (SBN 335203)
**POLSINELLI LLP**
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Tel:    (310) 229-1355
Fax:    (415) 276-8959
Email: mvan@polsinelli.com

Ray L. Weber (To be admitted *pro hac vice*)
Laura J. Gentilcore (To be admitted *pro hac vice*)
**RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER**
106 South Main Street, Suite 400
Akron, OH 44308
Tel:    (330) 376-1242
Fax:    (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com


*Attorneys for Plaintiff DANIEL E. GRIGSON*

COMPLAINT