MELENIE VAN (SBN 335203)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 229-1355
Facsimile:  (415) 276-8959
Email: mvan@polsinelli.com

Ray L. Weber (Admitted *pro hac vice*)
Laura J. Gentilcore (Admitted *pro hac vice*)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone:  (330) 376-1242
Facsimile:   (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

Attorneys for Plaintiff
Daniel E. Grigson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| DANIEL E. GRIGSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LOPEZ, an individual; KRISTEN ANDERSON-LOPEZ, an individual; THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; HOLLYWOOD RECORDS, INC., a Delaware corporation; DISNEY DTC, LLC, a Delaware limited liability company; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:22-cv-07971-RAO<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

**JURISDICTION AND VENUE**

1. This action arises under the Copyright Act of 1976, Title 17 U.S.C. §101 *et seq.*

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. §1338(a) (actions arising under any Act of Congress relating to copyright).

3. The Court has personal jurisdiction over each of the DEFENDANTS because one or more DEFENDANTS reside, have agents, do or transact business, or are otherwise found, here, and have purposefully availed themselves of the privilege of doing business in California and this District, and the wrongful acts of DEFENDANTS took place, in whole or in part, in this District.

4. Venue is proper in this District under 28 U.S.C. §1400(a), because DEFENDANTS or their agents reside or may be found here.   Alternatively, under 28 U.S.C. §1391(b)(2), this is a judicial District in which a substantial part of the events or omissions giving rise to the claim occurred.

**PARTIES**

5. Plaintiff, DANIEL E. GRIGSON ("GRIGSON"), is an individual residing at 2844 Ware Street, Blackshear, Georgia 31516.   GRIGSON is the coauthor (**EXHIBIT 1**) of the musical work entitled "That Girl," and by virtue of assignment (**EXHIBIT 2**), the owner of an undivided one-half interest in and to the copyright in the musical composition, and sole owner of the copyright in the sound recording.

6. Upon information and belief, Defendant, ROBERT LOPEZ ("R LOPEZ"), is an individual doing business in and with the residents of California, including within this District.

7.    Upon information and belief, Defendant, KRISTEN ANDERSON-LOPEZ ("K A-LOPEZ") is an individual doing business in and with the residents of California, including within this District.

8.    Upon information and belief, Defendant, THE WALT DISNEY COMPANY is a Delaware corporation duly authorized to do and doing business in this District, with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521.

9.    Upon information and belief, Defendant, DISNEY ENTERPRISES, INC., is a Delaware corporation duly authorized to do and doing business in this District, with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521.

10.    Upon further information and belief, Defendant, DISNEY ENTERPRISES, INC., is a subsidiary of THE WALT DISNEY COMPANY.

11.    Upon further information and belief, Defendant, DISNEY ENTERPRISES, INC., operates one or more film production subsidiaries under the fictitious name WALT DISNEY STUDIOS.

12.    Upon further information and belief, Defendant, DISNEY ENTERPRISES, INC., operates a film production subsidiary in this District under the fictitious name WALT DISNEY ANIMATION STUDIOS.

13.    Upon further information and belief, WALT DISNEY ANIMATION STUDIOS produced the animated musical film, FROZEN II.

14.    Upon further information and belief, Defendant, THE WALT DISNEY COMPANY owns a film distribution division in this District under the fictitious name WALT DISNEY STUDIOS MOTION PICTURES, which division has and continues to reproduce and distribute the animated musical film, FROZEN II.

15.    Upon information and belief, Defendant, HOLLYWOOD RECORDS, INC., is a California corporation duly authorized to do and doing business in this

District, with its principal place of business at 500 South Buena Vista Street, Burbank, California, 91521.

16.     Upon further information and belief, Defendant, HOLLYWOOD RECORDS, INC., is a division of THE WALT DISNEY COMPANY, which division produces soundtracks for films produced by WALT DISNEY ANIMATION STUDIOS, including the animated musical film, FROZEN II.

17.     Upon information and belief, Defendant, DISNEY DTC, LLC, is a Delaware limited liability company duly authorized to do and doing business in this District, with a principal place of business at 500 South Buena Vista Street, Burbank, California, 91521, which operates streaming services for WALT DISNEY STUDIOS MOTION PICTURES, including for the film, FROZEN II.

18.     Upon information and belief, Defendants, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, acting individually and in concert, directly or indirectly through one or more of their subsidiaries and/or divisions, whether named hereinabove or otherwise ("AFFILIATES") and/or one or more JOHN DOES, produced, released, and distributed, and continue to reproduce and distribute, the animated musical film entitled FROZEN II, with the musical composition "Some Things Never Change" being performed within said film, related soundtrack and digital transmission of audio and video content.

19.     The true names, conduct and capacities of DEFENDANTS sued as JOHN DOES 1 through 10, inclusive, are presently unknown to GRIGSON who, therefore sues each of these DEFENDANTS by such fictitious name. GRIGSON will include the true names and capacities of these JOHN DOES when they are ascertained.

20.   Each of the JOHN DOES is responsible in some manner, including, *inter alia,* as infringers, contributory infringers, and/or agents for the conduct alleged herein, and for the injuries suffered by GRIGSON.

21.   Upon information and belief, at all times mentioned herein, each DEFENDANT was an agent, partner, representative, affiliate, employee, and/or alter ego of every other DEFENDANT, and in doing the things alleged herein, was acting pursuant to and within the course and scope of such agency representation, affiliation, control or employment, and was acting with the consent, permission and authorization of the other DEFENDANTS unless otherwise noted.

22.   Whenever this First Amended Complaint refers to any act or acts of a DEFENDANT, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of the responsible DEFENDANT authorized such act while actively engaged in the management, direction or control of the affairs of DEFENDANT, and each of them, and/or by persons who are the alter ego of DEFENDANTS, or while acting within the scope of their agency, affiliation, control or employment.  Whenever this Complaint refers to any act of DEFENDANTS, the reference shall be deemed to be the act of DEFENDANTS, jointly and severally.

## BACKGROUND FACTS

23.   GRIGSON repeats and realleges Paragraphs 1 through 22 above as if fully rewritten.

24.   GRIGSON is a songwriter, performing artist, musician, and recording artist.  In 1996, he started Pelican Records.  In 1999, Pelican Records released the CD "Planet Necco" which included the track "That Girl," and which was available for streaming, download and purchase on mp3.com.  GRIGSON and Neal Bedford

1  Bryant are coauthors of the words and music, and the sound recording, for the song
2  "That Girl."

3       25.    In 2000, GRIGSON applied for copyright registration (compact disc
4  and lyrics sheets) for "Breakfast Songs, Vol. 1" which included the track "That Girl."

5       26.    In 2000 Pelican Records released the CD "Cinco de Necco: Musica
6  Suave" which included the track "That Girl."

7       27.    In 2001, Pelican Records released "Blue Hair Day" which included the
8  track "That Girl" and available in hard copy, download and streaming.  Also in 2001,
9  "Blue Hair Day" was registered with SoundScan for public sale and distribution.

10       28.    Since 2001 through today, "Blue Hair Day," including "That Girl" has
11  been available on dozens of music platforms including iTunes, Spotify, Apple
12  Music, and Amazon Music.   Between 2001-2014 "That Girl" streamed on
13  Trusonic/Mood Music commercial streaming platform more than 100,000 times.

14       29.    GRIGSON has a very public history of writing original music for and
15  with children:

16            a.  In 2007, GRIGSON started "The Environmental Club" youth group,
17               which maintained a web site, Facebook, and YouTube page to share
18               original music written for and with kids.

19            b.  In 2008, lyrics for GRIGSON'S song "Trini" (recorded by kids)
20               were used and reprinted with credit in a book released by Chicago's
21               Shedd Aquarium.

22            c.  Also in 2008, Pelican Records released "Voices," a CD of original
23               music written for and with kids.  It remains available online for
24               streaming and download and hard copy purchase.

25            d.  In 2009, Pelican Records released "Do We Care?"  This is a CD of
26               original music written for and with kids.  It, also, remains available
27               online for streaming and download and hard copy purchase.

28

e.  In addition, in 2009, GRIGSON received the 2009 "SeaWorld and Busch Gardens Environmental Excellence Award" for his work writing, producing, releasing, and teaching kids through creating music.  This is a national award with an Award Ceremony at SeaWorld in Florida, and it was covered in the news.

f.  Also in 2009, GRIGSON started "The Maasai Music Project." For the first time ever, kids from the United States worked with kids in Africa to create original music together, a person-to-person collaboration across continents and cultures. This project continues to this day and has been publicly available online since its inception. GRIGSON has returned to Africa three more times to continue the project which is promoted on Facebook, YouTube, and Instagram.

g.  Between 2009-2014, GRIGSON, first through Pelican Records and thereafter Necco Records, produced live music performances featuring kids writing original songs.  Performances were streamed and promoted online, including on the websites www.neccorecords.com, www.neccosforbreakfast.com, and www.maasaimusicproject.com, and on social media.  In 2012, Necco Records released "Together, Pamoja, Tenebo," a CD of original music written for and with kids in the United States and Africa, which remains available online for streaming, including on iTunes, Spotify, Apple Music and Amazon Music.  It is registered with Soundscan and remains available through major retailers such as Amazon and Target.com

h.  In 2016, GRIGSON started The Sprout Experience, an educational nonprofit with a mission to create and sustain immersive youth programs that encourage a love of learning, foster social/emotional

growth, promote global citizenship, and have a long-lasting impact on the lives and learning of its students.  From 2016 through today, The Sprout Experience has traveled all around the world and country with kids.  Music is featured in every one of its programs.  It has maintained an active and public presence online, including on Facebook, Instagram, YouTube, Twitter, and on its own website www.thesproutexperience.org.

i. In 2017, GRIGSON created The Sprout Experience "Songwriting Workshop."  GRIGSON works with kids to write, perform, and produce original music.  This program has maintained a public presence online, including details about the program, itself, GRIGSON'S credentials, and samples of his music.

30.  Grigson is a coauthor of the musical composition entitled "That Girl" (**EXHIBIT 1**), and by virtue of assignment dated August 20, 2022, from Neal Bryant Bedford (**EXHIBIT 2**), the owner of an undivided one-half interest in the copyright for the musical composition entitled "That Girl."  The copyright in the musical composition for "That Girl" was registered by GRIGSON with the United States Copyright Office on or about January 18, 2000, and bears Registration No. PAu002489317.  (**EXHIBIT 1**).

31.  GRIGSON is also a coauthor of the sound recording of the musical composition entitled "That Girl" (**EXHIBIT 3**), and by virtue of assignment dated August 20, 2022, from Neal Bryant Bedford (**Exhibit 2**), the sole owner of the copyright for the sound recording for the work entitled "That Girl."  The copyright in the sound recording for "That Girl" was registered by GRIGSON with the United States Copyright Office on or about August 16, 2022, and bears Registration No. SR 939-221(**Exhibit 5**).

32.     Until December 29, 2005, GRIGSON, himself, was also the owner of an undivided one-half interest in the aforesaid copyright in the musical composition for "That Girl."  On September 12, 2005, GRIGSON and his wife filed a voluntary petition seeking relief under Chapter 7 of the Bankruptcy Code, when he inadvertently failed to list his undivided one-half interest in the aforesaid copyright in the musical composition as an asset.  At the time of GRIGSON'S bankruptcy filing, the aforesaid copyright had no monetary value.  At the time of GRIGSON'S bankruptcy filing, GRIGSON did not have any motivation to omit his interest in the aforesaid copyright as he lacked a realistic expectation of monetary return from the aforesaid copyright.  Because of his omission, however, GRIGSON'S undivided one-half interest in the aforesaid copyright in the musical composition remains with the bankruptcy Trustee.

33.     Other than GRIGSON, and the bankruptcy Trustee, there are no other persons or entities holding an interest in the aforesaid copyrights.

34.     By virtue of his ownership interests in the aforesaid copyrights, GRIGSON has the legal right to assert and herein and hereby asserts claims for copyright infringement against the named DEFENDANTS and JOHN DOES.

35.     Upon information and belief, R LOPEZ has publicly admitted he always loves to listen to other songs that could be useful to draw inspiration from and loves watching any kind of YouTube.  (**EXHIBIT 3**).

36.     R LOPEZ purports to be a co-author of the song "Some Things Never Change" from the animated feature film FROZEN II. (**EXHIBIT 4**).

37.     K A-LOPEZ purports to be a co-author of the song "Some Things Never Change" from the animated feature film FROZEN II.  (**EXHIBIT 4**).

38.     Upon information and belief, R LOPEZ and K A-LOPEZ wrote the musical composition "Some Things Never Change" at the direction of or in concert with   DEFENDANTS,   THE   WALT   DISNEY   COMPANY   and   DISNEY

8

ENTERPRISES, INC., either directly or through one or more of their affiliates, including but not exclusively, WALT DISNEY ANIMATION STUDIOS, WALT DISNEY STUDIOS, DISNEY DIGITAL STUDIOS SERVICES, DISNEY MUSIC GROUP and DISNEY+ ("AFFILIATES"), and one or more JOHN DOES.

39.   Upon information and belief, the musical composition for "Some Things Never Change" was a work for hire by R LOPEZ and K A-LOPEZ for THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES, INC., and/or one or more of their AFFILIATES; or R. LOPEZ and K A-LOPEZ either directly, or indirectly through one or more JOHN DOES, assigned ownership rights or licensed performance rights to the song "Some Things Never Change" to, THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES, INC., and/or one or more of their AFFILIATES, either directly or through a JOHN DOE.

40.   The song "Some Things Never Change" was performed in FROZEN II at the direction of THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES, INC., and/or one or more of their AFFILIATES, and/or one or more JOHN DOES.

41.   Upon information and belief, THE WALT DISNEY COMPANY and DISNEY ENTERPRISES, INC., or one or more of its AFFILIATES, and one or more JOHN DOES, produced, released, and distributed the film FROZEN II.

42.   Upon information and belief, the film FROZEN II was released in theaters across the United States on November 27, 2019, and ran multiple times daily for at least nine weeks.

43.   Upon information and belief, the film FROZEN II became available on DVD and Blu-ray from THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES INC., directly or through their AFFILIATES or other JOHN DOES, on or about February 25, 2020, and continues to be so available.

44.     The film FROZEN II also has been and continues to be available for streaming from THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES INC., through DISNEY DTC, LLC, or other of their AFFILIATES, and other JOHN DOES platforms.

45.     Upon information and belief, THE WALT DISNEY COMPANY and/or DISNEY ENTERPRISES INC., either directly or through HOLLYWOOD RECORDS, INC., or other of their AFFILIATES or JOHN DOES, have produced, released and distributed related soundtracks which continue to be available for download on multiple platforms, including but not exclusively on www.kidsmusics.com, www.music.apple.com, and www.download-soundtracks.com.

46.     GRIGSON first heard the song "Some Things Never Change" while attending the film FROZEN II during the week after its release on November 27, 2019.  As the song was being performed, he involuntarily stood straight up, turned to look at his wife, and then at his kids, his eyes wide open as saucers. The close similarity to his own work "That Girl" was so striking to him that it caught him off guard, the beat, rhythm, feel, theme, words.  He sat back down with his head in his hands.  His 11-year-old daughter leaned over to him and said "Dad, Disney took your song."

47.     Shortly thereafter, GRIGSON put audio files for both songs into his computer to analyze them further.  He located a version of "Some Things Never Change" with music only, and he transposed "That Girl" down 2 steps to match keys. He did not alter anything else.  Not the rhythm.  Not the tempo.  Not the chords. Nothing was added.  To him, the musical similarity was striking.

48.      GRIGSON also found similarity in the structure and lyrics.

49.     Based upon GRIGSON'S findings, an experienced forensic musicologist, Dr. Robert Tomaro, a symphonic conductor, trained in the areas of

10

classical, popular, and commercial music, with experience in the techniques of the recording studio and in recorded music, as well as in guitar performance as a professional guitarist, was retained to perform a comparative analysis of "That Girl" versus "Some Things Never Change."

50.     Preliminary and further analyses were undertaken using several methodologies:   Recording Analysis (which involves the identification and differentiation between two recorded works in terms of melody, harmony, and/or digital signals, in the exact form in which they were recorded), Compositional Analysis (in which similarity is established by a reductive approach), a Temporal or Timeline Analysis (in which songs are mapped as a timeline, and important lyrical and structural elements are cited compared and explained), and an Audio Analysis.

51.     Forensic musicologist, Dr. Tomaro, found eight significant similarities shared by "That Girl" and "Some Things Never Change" in the following areas: melodies and melodic structure; musical forms and musical gestures; rhythm sections parts; tempos; chord progressions; cadences at the end of the choruses; lyrics; and arrangements and lyrical structures.

52.     A temporal or timeline comparison of similarities in the lyrics and in the forms of the arrangements in both songs shows that:

a.  Each chorus has the same or similar words that appear in the same order in each chorus.  Below is a comparison of the three lines that are repeated in each song in each chorus.  These are the main chorus lines, the main theme of each song, the most memorable and important lyric of each song including the first and the last (resolution) line of each chorus.

| "That Girl" | "Some Things Never Change" |
|---|---|
| some people never change<br><br>but inside they're still the same<br>some people never change | some things never change<br>Some things stay the same<br>Some things never change |

    b. "That Girl" and "Some Things Never Change" have identical song structure in terms of arrangement of sections. Below, similar lyrics, set in similar structural forms, are outlined in color. Both songs exhibit the identical arrangement of the various sections, from placement of the "intro" through placement of the "chorus" and placement of the ending or "outro" of the songs.

    c. Seen below is a side-by-side comparison of the timelines of the lyrical structures of both recordings. The similarity in the structure of both songs was opined by forensic musicologist, Dr. Tomaro, to be significant because:

        *i.* the structure is quite complex and unusual for a pop song because pop songs generally follow simpler patterns, such as "verse, chorus, bridge, verse chorus, verse chorus, ending;" and

        *ii.* the arrangement of the sections in both songs follows a unique pattern, yet one that is identical.

| "That Girl" | "Some Things Never Change" |
|---|---|
| MUSIC INTRO<br>VERSE<br>CHORUS<br>VERSE<br>CHORUS<br>BRIDGE PT 1<br>BRIDGE PT 2 | MUSIC INTRO<br>VERSE<br>CHORUS<br>VERSE<br>CHORUS<br>BRIDGE PT 1<br>BRIDGE PT 2 |

FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

| CHORUS<br>OUTRO | CHORUS<br>OUTRO |
|---|---|
| **"That Girl"**<br><br>**MUSIC INTRO**<br><br>**VERSE**<br>i remember that girl, she was my best friend<br>she would always have my back<br>she'd be there for me as long as there was a me, a statement so true it's a fact<br><br>of course i knew all about her & her friends<br>relationships that died in the past<br>but she'd be there for me as long as there was a me, this was different it would last<br><br><br><br>**CHORUS**<br>**some people never change**<br>they put on a different mask or cut their hair or get contacts<br>**but inside they're still the same**<br>**some people never change**<br><br><br><br>**VERSE**<br>that girl played it up good,<br>she really kept it up<br>she must have had a really good time<br>she'd be there for me<br>as long as there was a me<br>a statement that's not worth a dime<br>Whistle...<br><br><br><br>**CHORUS**<br>**some people never change**<br>they put on new perfume<br>or buy new clothes<br>and lie to you<br>**but inside they're still the same**<br>**some people never change** | **"Some Things Never Change"**<br><br>**MUSIC INTRO**<br><br>**VERSE**<br>Yes, the wind blows a little bit colder<br>And we're all getting older<br>And the clouds are moving on<br>with every autumn breeze<br><br>Peter Pumpkin just became fertilizer<br>And my leaf's a little sadder and wiser<br>That's why I rely on certain certainties<br>[instrumental]<br><br><br><br>**CHORUS**<br>**Yes, some things never change**<br>Like the feel of your hand in mine<br>**Some things stay the same**<br>Like how we get along just fine<br>Like an old stone wall that'll never fall<br>Some things are always true<br>**Some things never change**<br>Like how I'm holding on tight to you<br><br><br>**VERSE**<br>The leaves are already falling<br>Sven, it feels like the future is calling<br>Are you telling me tonight you're gonna get down on one knee? Yeah bud,<br>I'm really bad at planning these things out<br>Like candlelight and pulling of rings out<br>Maybe you should leave all the romantic stuff to me<br><br><br>**CHORUS**<br>**Yes, some things never change**<br>Like the love that I feel for her<br>**Some things stay the same**<br>Like how reindeers are easier<br>But if I commit and I go for it<br>I'll know what to say and do Right? |

| | |
|---|---|
| | **Some things never change**<br>Sven, the pressure is all on you |
| **BRIDGE PT 1**<br>when they lie to you<br>and fill your head with dreams<br>when they comfort you<br>with words of polyurethane<br>when they won't look at you,<br>their eyes will tell it all<br>when all these words ring true,<br>get ready for a fall | **BRIDGE PT 1**<br>The winds are restless<br>Could that be why I'm hearing this call?<br>Is something coming?<br>I'm not sure I want things to change at all<br>These days are precious<br>Can't let them slip away<br>I can't freeze this moment<br>But I can still go out and seize this day |
| **BRIDGE PT 2**<br>in a different place<br>in a different time<br>maybe it could've worked out<br>but i really think<br>it's better this way<br>she's a problem child i can do without<br>i should've listened<br>to what people had to say<br>it could've been so easy<br>but i had to learn the hard way that | **BRIDGE PT 2**<br>The wind blows a little bit colder<br>And you all look a little bit older<br>It's time to count our blessings<br>Beneath an autumn sky<br>We're always living the kingdom aplenty<br>That stands for the good of the many<br>And I promise you the flag of Arendelle<br>will always fly<br>Our flag will always fly<br>Our flag will always fly<br>Our flag will always fly |
| **CHORUS**<br>**some people never change**<br>they can laugh awhile or sing to you or fake a smile<br>**but inside they're still the same**<br>**some people never change** | **CHORUS**<br>**some things never change**<br>Turn around and the time has flown<br>**Some things stay the same**<br>Though the future remains unknown<br>May our good luck last, May our past be past<br>Time's moving fast, it's true<br>**Some things never change**<br>And I'm holding on tight to you |
| **OUTRO**<br>some people never change<br>some people never change<br>some people never change<br>Does that seem strange? | **OUTRO**<br>Holding on tight to you<br>Holding on tight to you<br>Holding on tight to you<br>I'm holding on tight to you |

53.   Forensic musicologist, Dr. Tomaro, found:

a. both songs follow the same rhythm, beat and tempo, especially noted in the nearly identical acoustic guitar underlying the majority of both songs;

b. The similarity is most apparent during the quiet parts of the songs; and

c. Comparing corresponding clips from the two songs compiled by GRIGSON, the tempo and rhythm are so similar they kept time and rhythm without alterations.

54.    A further analysis of the opening bars of both songs was had by forensic musicologist, Dr. Tomaro.   For that analysis the key of "Some Things Never Change" was transposed from C Major to G Major, the key in which "That Girl" is performed.  It showed as follows:

a. The tempos of both songs are identical. Quarter note = 92 BPM;

b. The chord progressions in the choruses of both songs are very similar.  In "That Girl," the second chord of the progressions is Em.  In "Some Things Never Change", it is Am;

c. In "That Girl" the final chord in the phrase appears as C/D and sometimes D.  In "Some Things Never Change," it is D7sus. Although the chords are different, they are both variations on a D chord and serve the function of a "5 Chord;"

d. Both chord progressions exhibit a similar harmonic movement and provide a similar harmonic background for the vocal melody that is sung over the progression; and

e. The similarities found in the opening bars of the choruses of both "That Girl" and "Some Things Never Change" are seen below, with the meaning of the circled notes being as explained below.

15

1    *i.*   The major melodic figure in the first of the chorus to
2          both songs is strikingly similar.  They both follow a
3          pattern of the same descending notes, beginning on B
4          and descending down to D, which is identified by the
5          circled numbers in the excerpts to both excerpts as
6          follows:

7               Circle 1 – B
8               Circle 2 – B is repeated
9               Circle 3 – G
10              Circle 4 – D

11   *ii.*  In the second bar of the chorus of both songs, the
12          melodic statement that began in the first bar is
13          completed.  In "That Girl," the phrase takes the form of
14          a descending line, beginning on B and descending
15          down to D, as follows:

16              Circle 5 – B
17              Circle 6 – A
18              Circle 7 – G
19              Circle 8 – D

20   *iii.* In the second half of the same bar in the chorus of
21          "Some Things Never Change," however, this phrase is
22          inverted; that is, it is played upside down, but
23          comprises the same melodic material.  It is transformed
24          into:  G…A…B…D, as follows:

25              Circle 5 – G
26              Circle 6 – A
27              Circle 7 – B

28

16

1

2

3

4

5

6

7

8

9

10

11

12

13



14    55.    Further analysis of both songs shows that a similar cadence occurs

15  simultaneously in both at the same point in their respective recordings, and that other

16  striking similarities exist in both cadences, as well.  In the exhibit below, these

17  similarities are identified in the excerpts to both songs as Circled numbers 1 through

18  5.

19            a.   There is a pause in the vocal melody of each song in the cadence.

20                 i.   Circle 1 - In the penultimate measure of both choruses,

21                      the vocal melody pauses on beat 4 of both songs, as is

22                      identified in both excerpts below and marked as Circle

23                      1.  In "That Girl", there is a pause after the lyric "same".

24                      The vocal line stops for 2 V2 beats before going on.

25                      Those beats are marked by a quarter note rest on beat

26                      4, following by a dotted quarter note rest at the

27

28

beginning of the following bar.  Similarly, in "Some Things Never Change," the vocal line pauses on the last 16th note of the measure on the word "change," also marked by a circle 1.  The note is held into the following bar. As in "That Girl," the pause lasts for just over one beat.

    *ii.*    Circle 2 - Coinciding with the pauses at the end of the bars in both songs, the instrumental accompaniment also pauses, and a chord is struck and held for a full bar in both songs, marked by circle 2 in both excerpts.  In "That Girl," this gesture is marked by a whole note at the beginning of the bar on a C major chord.  In "Some Things Never Change," it is marked by D major chord and a whole note also on beat one of the next bar, and also identified by circle 2.

    *iii.*    Circle 3 - In the second bar of both excerpts below, the vocal lines in both songs reenter just after beat one at the same time.  In "That Girl," the vocal entrance is on the last half of beat one on the word "some," marked by circle 3.  In "Some Things Never Change," the vocal line also reenters on the second half of beat 1, on the word "like", and is also marked by circle 3.

b.  There are similarities in the melodies in the cadences of both songs.

    *i.*    Circles 4 and 5 - The melodies in the vocal lines in both songs exhibit striking similarities in the second half of both the second bars of the cadence. The primary

18

emphasis in both melodic lines occurs on beat 3 in both songs, on the note B, and is identified below in circle 4. Then on beat 4, the melody in both songs moves to the note G and is identified by circle 5 in both song excerpts below.

   c. These cadential passages are a unique and catchy feature of both songs, and the fact that both songs share five distinct similarities at the same place and in the space of a brief, two bar phrase, it is opined by forensic musicologist, Dr. Tomaro, as significant.



56. A further reductive analysis of the depiction of the central melodies (or hooks) of both songs was had, in which the passing tones, rests and rhythmic anomalies in the scores were removed to highlight significant similarities. It revealed:

   a. The musical elements in the melodies of both songs are not only similar in themselves, they are also linked to lyrics that are

similar in both songs and that appear in the same context in both songs; and

b. A similar lyrical phrase is found in the chorus of both songs, differing only in the use of the two words "people" and "things," that is "people" is sung in "That Girl" and "things" is sung in "Some Things Never Change;"

c. There is a three-note rhythmic pattern which appears in the same place in both songs, structured as a 16th note, followed by an 8th note, followed by a 16th note.  This central motive (or hook) to both songs is then repeated through the songs;

d. A variation of this phrase is then repeated in both songs, and it also contains similarities, both phrases again begin with the note B, the rhythmic figure that occurred previously is now changed to a new rhythmic pattern, 8th note, 16th note, 16th note, and both phrases end on the phrase "the same," which rhymes with "change" from the first phrase of the hook;

e. At the end of the chorus in Some Things Never Change," there is a cadence, during which the instrumental accompaniment stops and a short vocal phrase is sung.  This melodic gesture is similar to the cadence found at the end of the chorus in "That Girl."  In "That Girl," the melody is not sung but played as a guitar solo;

f. The cadence in "That Girl" has several melodic events appearing in a particular order.  Those melodic events appear in a similar way in the cadence in the end of chorus in "Some Things Never Change."

g. The rhythm section parts in the recordings of "That Girl" and "Some Things Never Change" also contain similarities. The chord progressions of both songs are quite similar; both chord progressions exhibit a similar harmonic movement and provide a similar harmonic base for the vocal melody that is sung over the progression; and

h. The rhythmic structure of the acoustic guitar parts in both songs are identical; the bass parts are quite similar; the drum parts are quite similar; the tempos of both songs are identical (quarter note =92 BPM); and beats 1 and 3 in both recordings are accented by the rhythm section which creates a 'bouncy' folk rock style pulse that supports the mood of the song and the theme of the lyrics.

57.   When excerpts from "That Girl" are played back-to-back with corresponding excerpts from "Some Thing Never Change" and, at times, excerpts from "That Girl" and "Some Things Never Change" are played simultaneously, audible evidence of the similarities in the melodies, chord progressions, and the rhythm section parts of both songs can be heard at the end of the choruses in both songs.

58.   Given the forgoing, the similarities in the songs are so striking that they can only be explained by copying, as opined by the forensic musicologist.

59.   DEFENDANTS, and each of them, by way of the conduct set forth herein, have infringed, and continue to infringe, GRIGSON'S rights in both the musical composition and sound recording of "That Girl" as set forth in the Counts below.

FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

## COUNT I—DIRECT COPYRIGHT INFRINGEMENT—COMMON ALLEGATIONS

60.     GRIGSON repeats the allegations set forth in paragraphs 1 through 59 above as if fully rewritten.

61.     GRIGSON is a coauthor and owner of an undivided one-half interest in the copyright for the musical composition for the song "That Girl."

62.     GRIGSON is a coauthor and sole owner of the copyright for the sound recording for the song "That Girl."

63.     "That Girl" is an original work of authorship fixed in a tangible means of expression, and as such is subject to protection under the Copyright Act 17 U.S.C. §102(a) (2).

64.     R LOPEZ and K A-LOPEZ had an ongoing and continuous opportunity of access to "That Girl" prior to the infringement alleged herein.

65.     R LOPEZ and K A-LOPEZ had a reasonable possibility to access "That Girl" though radio play, online, download and/or streaming, particularly but not exclusively, through YouTube.

66.     The striking similarities between "That Girl" and "Some Things Never Change" also establish a possibility of access.

67.     Upon information and belief, R LOPEZ had access to "That Girl."

68.     R LOPEZ admits to listening to YouTube for inspiration, a venue on which "That Girl" was available prior to the infringement alleged herein.

69.     R LOPEZ and/or K A-LOPEZ would have been motivated to listen to "That Girl" given GRIGSON'S very public history of writing original music for and with children, as well as the availability of "That Girl" prior to the infringement alleged herein.

70.     At all times relevant, R LOPEZ's conduct has been and continues to be knowing, willful, and with complete disregard to GRIGSON'S rights.

1     **COUNT II—RIGHT TO REPRODUCE THE MUSICAL COMPOSITION**

2        71.    GRIGSON repeats the allegations set forth in paragraphs 1 through 70

3 above as if fully rewritten.

4        72.    The musical composition, "That Girl," is an original work of authorship

5 under 17 U.S.C. §102(a)(2), for which GRIGSON is an author and owner of an

6 undivided one-half interest in the copyright.

7        73.    As the owner of an undivided one-half interest in the copyright in the

8 musical composition "That Girl," GRIGSON has the exclusive right under 17 U.S.C.

9 §106(1) to reproduce "That Girl," and authorize its reproduction, and be

10 compensated for reproductions.

11        74.    R LOPEZ and K A-LOPEZ copied substantial qualitative and

12 quantitative portions of the musical composition "That Girl" in creating the

13 infringing song "Some Things Never Change."

14        75.    R LOPEZ and K A-LOPEZ did not seek or receive GRIGSON'S

15 consent or authorization to copy, sample, reproduce or interpolate any portion of the

16 musical composition "That Girl."   GRIGSON has never licensed or otherwise

17 authorized any DEFENDANT to reproduce "That Girl."   Nonetheless, "Some

18 Things Never Change" incorporates and includes substantial and material portions

19 of "That Girl."

20        76.    R LOPEZ AND K A-LOPEZ have violated GRIGSON'S exclusive

21 right to reproduce the musical composition "That Girl" by reproducing it without

22 GRIGSON'S consent, license or permission, and without his being compensated, in

23 violation of Federal Copyright Law, with the result being damage to GRIGSON.

24        77.    At all times relevant, R LOPEZ'S conduct has been and continues to be

25 knowing, willful, and with complete disregard of GRIGSON'S rights.

26        78.    THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC.,

27 HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly

28

through one or more of their AFFILIATES and JOHN DOES, since November 27, 2019, have continuously and repeatedly infringed, and are presently infringing, GRIGSON'S exclusive right under 17 U.S.C. §106(1) to reproduce the musical composition "That Girl" by reproducing and thereafter selling, broadcasting, streaming, licensing and otherwise exploiting and monetizing the song "Some Things Never change" without the consent, license or permission of GRIGSON, without compensation to GRIGSON, with GRIGSON being damaged as the result.

## COUNT III—RIGHT TO PREPARE DERIVATIVE WORKS OF THE MUSICAL COMPOSITION

79.    GRIGSON repeats the allegations set forth in paragraphs 1 through 78 above as if fully rewritten.

80.    As the owner of an undivided one-half interest in the musical composition "That Girl," GRIGSON has the exclusive right to prepare derivative works and be compensated for derivative works made from the musical work "That Girl" under 17 U.S.C. §106(2).

81.    R LOPEZ and K A-LOPEZ copied substantial qualitative and quantitative portions of the musical composition "That Girl" in creating the infringing song "Some Things Never Change."

82.    R LOPEZ and K A-LOPEZ did not seek or receive GRIGSON'S consent or authorization to copy, sample, reproduce or interpolate any portion of the musical composition "That Girl."   GRIGSON has never licensed or otherwise authorized any DEFENDANT to create derivative works based upon it. Nonetheless, "Some Things Never Change" incorporates and includes substantial and material portions of "That Girl."

83.    R LOPEZ AND K A-LOPEZ have violated GRIGSON'S exclusive right to prepare derivative works without his consent, license, or permission, and

24

1  without his being compensated, in violation of Federal Copyright Law, and
2  GRIGSON has been damaged as a result.

3      84.    THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC.,
4  HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly
5  through their AFFILIATES and JOHN DOES, have continuously and repeatedly
6  infringed, and are presently infringing, GRIGSON'S exclusive right to make
7  derivative works from the musical composition "That Girl" under 17 U.S.C. §106(2)
8  by selling, broadcasting, streaming, licensing and otherwise exploiting and
9  monetizing the song "Some Things Never change" without the consent, license,
10 license or permission of GRIGSON, without compensation to GRIGSON, with
11 GRIGSON being damaged as the result.

12

13 **COUNT IV—RIGHT TO DISTRIBUTE THE MUSICAL COMPOSITION**

14     85.    GRIGSON repeats the allegations set forth in paragraphs 1 through 84
15 above as if fully rewritten.

16     86.    As the owner of an undivided one-half interest in the copyright for the
17 musical composition "That Girl," GRIGSON has an exclusive right to distribute it
18 and be compensated for its distribution under 17 U.S.C. §106(3).

19     87.    R LOPEZ and K A-LOPEZ have infringed the musical composition
20 "That Girl" in producing the song "Some Things Never Change" for, or assigning
21 the rights to, or licensing the song "Some Things Never Change" for performance to
22 THE WALT DISNEY COMPANY, DISNEY ENTERPRISES INC., and their
23 AFFILIATES, whether directly or indirectly through JOHN DOES in violation of
24 GRIGSON'S exclusive right to distribute the musical work "That Girl" under 17
25 U.S.C. §106(3).

26     88.    THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC.,
27 HOLLYWOOD RECORDS, INC. and DISNEY DTC, LLC, directly and indirectly

28

FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

through their AFFILIATES and JOHN DOES have continuously and repeatedly infringed, and are presently infringing, GRIGSON'S exclusive right to distribute the musical composition "That Girl" under 17 U.S.C. §106(3) by selling, broadcasting, streaming, licensing and otherwise exploiting and monetizing the song "Some Things Never Change" without the consent, license, or permission of GRIGSON, without compensating GRIGSON, with GRIGSON being damaged as the result.

## COUNT V—RIGHT TO PUBLICLY PERFORM THE MUSICAL COMPOSITION

89.     GRIGSON repeats the allegations set forth in paragraphs 1 through 88 above as if fully rewritten.

90.     As the owner of an undivided one-half interest in the musical composition, "That Girl," GRIGSON has an exclusive right to publicly perform the musical work "That Girl" and be compensated for its public performance under 17 U.S.C. §106(4).

91.     DEFENDANTS have performed and continue to perform "Some Things Never Change," thereby violating GRIGSON'S exclusive right to publicly perform the musical work "That Girl," without his consent, license or permission, and without his being compensated, in violation of Federal Copyright Law, to the damage of GRIGSON.

## COUNT VI – RIGHT TO REPRODUCE THE SOUND RECORDING

92.     GRIGSON repeats the allegations set forth in paragraphs 1 through 91 above as if fully rewritten.

93.     As coauthor and an owner of the sound recording for "That Girl," and as owner of all right, title and interest in the copyright by virtue of assignment, including rights incident thereto, GRIGSON had and has the exclusive right to turn

that musical composition to a sound recording.  DEFENDANTS did this without GRIGSON'S permission or licenses.

94.     Further, while it is not known if the actual sounds from "That Girl" are used in the song "Some Things Never Change," certain sounds were re-recorded or re-played from GRIGSON'S song into DEFENDANTS' song.

95.     As the coauthor and an owner of the sound recording for "That Girl," and owner of all right, title and interest in the copyright by virtue of assignment, including right incident thereto, GRIGSON had and has an exclusive right to reproduce, and be compensated for reproductions of the sound recording per 17 U.S.C. §106(1).

96.     DEFENDANTS have and continue to violate GRIGSON'S exclusive right to reproduce the sound recording for "That Girl" without his consent, license or permission, or compensation, in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT VII – RIGHT TO DISTRIBUTE THE SOUND RECORDING

97.     GRIGSON repeats the allegations set forth in paragraphs 1 through 96 above as if fully rewritten.

98.     As the coauthor and an owner of the sound recording for "That Girl," and as owner of all right, title and interest in the copyright by virtue of assignment, including rights incident thereto, GRIGSON had and has the exclusive right to distribute the sound recording, and be compensated therefor, per 17 U.S.C. §106(3).

99.     DEFENDANTS have and continue to violate GRIGSON'S exclusive right to distribute the sound recording without his consent, license or permission, or compensation, in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT VIII – RIGHT TO PREPARE DERIVATIVE WORKS
## OF THE SOUND RECORDING

100.    GRIGSON repeats the allegations set forth in paragraphs 1 through 99 above as if fully rewritten.

101.    As the coauthor and an owner of the sound recording for "That Girl," and as owner of all right, title and interest in the copyright by virtue of assignment, including rights incident thereto, GRIGSON had and has the exclusive right to prepare derivative works of the sound recording for "That Girl," and be compensated therefor, per 17 U.S.C. §106(2).

102.    DEFENDANTS have violated and continue to violate GRIGSON'S exclusive right to prepare derivative works of the sound recording without his consent, license or permission, or compensation, in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT IX – RIGHT TO PUBLICLY PERFORM THE SOUND
## RECORDING

103.    GRIGSON repeats the allegations set forth in paragraphs 1 through 102 above as if fully rewritten.

104.    As the coauthor and an owner of the sound recording for "That Girl," and as owner of all right, title and interest in the copyright by virtue of assignment, including rights incident thereto, GRIGSON had and has the exclusive right to publicly perform the sound recording, and be compensated therefor, per 17 U.S.C. §106(6).

105.    DEFENDANTS have and continue to violate GRIGSON'S exclusive right to publicly perform, and be compensated therefrom, without his consent, license or permission, or compensation, in violation of Federal law, and GRIGSON has been damaged as a result.

## COUNT X—INDIRECT INFRINGEMENT

106. GRIGSON repeats the allegations set forth in paragraphs 1 through 105 above as if fully rewritten.

107. DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and JOHN DOES, individually and collectively, induced, caused. and assisted in the direct infringement by R LOPEZ and K A-LOPEZ of the musical composition and sound recording of "That Girl," and as such, are contributorily liable for copyright infringement in connection with the unauthorized exploitation of "That Girl."

108. DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and JOHN DOES, individually and collectively, knew or had reason to know at least based on the public statement of R LOPEZ that he listened to YouTube for inspiration, or acted with reckless indifference as to whether their own conduct, constituted copyright infringement, and therefore materially contributed to and otherwise facilitated the unauthorized exploitation of "That Girl" and the creation and monetization of "Some Things Never Change."

109. DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and JOHN DOES, individually and collectively, through their inducement, causation and assistance in the direct copyright infringement alleged herein, have profited, and continue to profit.

110. DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC,

1    LLC, directly and indirectly through one or more of their AFFILIATES and JOHN

2    DOES, individually and collectively, through their inducement, causation and

3    assistance in the direct copyright infringement alleged herein has caused actual

4    damage to GRIGSON while profiting.

5        111.  Due to the acts of direct and indirect copyright infringement of

6    DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES,

7    INC., HOLLYWOOD RECORDS, INC., DISNEY DTC, LLC, as alleged herein,

8    GRIGSON has suffered general and special damages, including without limitation,

9    lost profits, royalties, license fees, and other revenues, in an amount to be established

10   at trial.

11       112.  Due to the acts of copyright infringement as alleged herein

12   DEFENDANTS, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS,

13   INC., and DISNEY DTC, LLC, have obtained direct and indirect profits they would

14   not otherwise have realized but for their infringement of GRIGSON'S rights in the

15   song "That Girl."  As such, GRIGSON is entitled to disgorgement of the profits of

16   said DEFENDANTS attributable to DEFENDANTS' infringement of GRIGSON'S

17   rights in the song "That Girl" in an amount to be established at trial.

18       113.  The wrongful conduct of DEFENDANTS, individually and

19   collectively, as alleged herein, is causing and, unless enjoined by this Court, will

20   continue to cause GRIGSON irreparable injury that cannot be fully compensated or

21   measured in monetary terms.  Pursuant to 17 U.S.C. §502, GRIGSON is entitled to

22   a permanent injunction prohibiting the reproduction, distribution, sale, public

23   performance or other use or exploitation of the song "Some Things Never Change."

24       114.  The wrongful conduct of DEFENDANTS, individually and

25   collectively, as alleged herein, has caused GRIGSON monetary damages including

26   but not exclusively lost revenues, lost profits, royalties, license fees, and other

27   revenues in an amount to be established at trial.

28

FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

115. The wrongful conduct of DEFENDANTS, individually and collectively, as alleged herein, is willful and/or with reckless disregard, entitling GRIGSON to seek enhanced damages, such as statutory damages of up to One Hundred Fifty Thousand Dollars ($150,000.00), and/or to preclude DEFENDANTS from proffering certain affirmative defenses and legal positions.

116. Accordingly, GRIGSON is entitled to an award against DEFENDANTS, individually and collectively, for recovery of DEFENDANTS' profits, GRIGSON'S actual damages or statutory damages, punitive damages, reasonable attorneys' fees and costs, pursuant to 17 U.S.C. §505.

## **PRAYER FOR RELIEF**

**WHEREFORE,** GRIGSON respectfully prays for judgment against all DEFENDANTS, and each of them individually, as follows:

A. A declaration that DEFENDANTS have infringed GRIGSON'S exclusive rights in the song "That Girl," in violation of the Copyright Act, 17 U.S.C. §§106(1), (2), (3), (4) and (6), and 501(a);

B A declaration that DEFENDANTS R LOPEZ and K A-LOPEZ are directly liable to GRIGSON for copyright infringement.

C. A declaration that DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., DISNEY DTC, LLC, are directly liable to GRIGSON for copyright infringement.

D. A declaration that DEFENDANTS, THE WALT DISNEY COMPANY DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, are jointly liable to GRIGSON for copyright infringement.

E. A declaration that DEFENDANTS, THE WALT DISNEY COMPANY DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and

31

1 | JOHN DOES as applicable, are contributorily liable to GRIGSON for copyright
2 | infringement.

3 |      F.    A permanent injunction requiring DEFENDANTS and their agents,
4 | servants, employees, officers, attorneys, successors, licensees, partners, and assigns,
5 | and all persons acting in concert or participation with each or any one of them, to
6 | cease directly and indirectly infringing, and causing, enabling, facilitating,
7 | encouraging, promoting, inducing, and/or participating in the infringement of any of
8 | GRIGSON'S rights protected by the Copyright Act (17 U.S.C. §502);

9 |      G.    For a constructive trust to be entered over any films, recordings,
10 | products, files, online programs, and other material, and all revenues resulting from
11 | the exploitation of same, for the benefit of GRIGSON;

12 |      H.    For an accounting of all profits derived from DEFENDANTS'
13 | exploitation of "That Girl;"

14 |      I.    For either the actual damages sustained by GRIGSON and any
15 | additional profits had by DEFENDANTS (17 U.S.C. §504(a)(1) and (b)); or at
16 | GRIGSON'S election before final judgment (i) a finding that the infringement was
17 | willful, (ii) an award of statutory damages under 17 U.S.C. §504(c)(1) and (2) in the
18 | increased amount of $150,000 as to each DEFENDANT found to be liable
19 | individually to GRIGSON for copyright infringement, and (iii) an award of statutory
20 | damages under 17 U.S.C. §504(c) in the increased amount of $150,000 as to any two
21 | or more DEFENDANTS found to be liable jointly and severally to GRIGSON for
22 | copyright infringement;

23 |      J.    For pre-judgment and post-judgment interest;

24 |      K.    For costs, with reasonable attorney fees awarded therewith, under 17
25 | U.S.C. §505; and

26 |      L.    For such other and further relief as to this Court seems just and proper.

27

28

## JURY DEMAND

GRIGSON demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Dated:  February 13, 2023          Respectfully submitted,


                                   _____/s/ Melenie Van_____
                                   Melenie Van
                                   POLSINELLI LLP
                                   2049 Century Park East, Suite 2900
                                   Los Angeles, CA 90067
                                   Tel:    (310) 229-1355
                                   Fax:    (415) 276-8959
                                   Email: mvan@polsinelli.com

                                   Ray L. Weber (Admitted *pro hac vice*)
                                   Laura J. Gentilcore (Admitted *pro hac vice*)
                                   RENNER, KENNER, GREIVE, BOBAK,
                                   TAYLOR & WEBER
                                   106 South Main Street, Suite 400
                                   Akron, OH 44308
                                   Tel:    (330) 376-1242
                                   Fax:    (330) 376-9646
                                   Email: rlweber@rennerkenner.com
                                   Email: ljgentilcore@rennerkenner.com

                                   *Attorneys for Plaintiff*
                                   *DANIEL E. GRIGSON*