Melenie Van (SBN 335203)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 229-1355
Facsimile:  (415) 276-8959
Email: mvan@polsinelli.com

Ray L. Weber (admitted *pro hac vice*)
Laura J. Gentilcore (admitted *pro hac vice*)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone:   (330) 376-1242
Facsimile:   (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

Attorneys for Plaintiff
Daniel E. Grigson

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| DANIEL E. GRIGSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT LOPEZ, an individual; KRISTEN ANDERSON-LOPEZ, an individual; THE WALT DISNEY COMPANY, a Delaware corporation; DISNEY ENTERPRISES, INC., a Delaware corporation; HOLLYWOOD RECORDS, INC., a Delaware corporation; DISNEY DTC, LLC, a Delaware limited liability company; and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:22-cv-07971-RAO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) AND FOR A MORE DEFINITE STATEMENT UNDER FED.R.CIV.P.12(e)**<br><br>Date:     May 10, 2023<br>Time:    10:00 a.m.<br>Hon. Rozella A. Oliver |

# TABLE OF CONTENTS

**Page No.**

I.  Introduction ...................................................................................... 1

II.  Defendants' Fed. R. Civ. P. 12(B)(6) Motion To Dismiss Grigson's
Sound Recording Infringement Claims........................................... 2

    A.  Standard Of Review—Motion To Dismiss.......................................... 2

    B.  Infringement Of A Copyrighted Sound Recording ............................ 3

III.  Plaintiff States Sufficient Facts From Which It Is More Than Plausible
That He Has An Ownership Interest In The Sound Recording
Copyright........................................................................................... 8

IV.  Grigson's "Remaining Counts" State Plausible Claims For Direct
Copyright Infringement As To All Defendants And Indirect Copyright
Infringement In The Alternative As To Defendants The Walt Disney
Company, Disney Enterprises, Inc., Hollywood Records, Inc. And
Disney DTC, LLC ............................................................................ 11

V.  Conclusion...................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

**Cases**

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*,
   29 F.3d 1529 (11th Cir. 1994) ........................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................... 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................... 2

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
   329 F3d 586 (7th Cir. 2003) ............................................................ 10

*Bridgeport Music, Inc. v. Dimension Films*,
   410 F.3d 792 (6th Cir. 2005) ................................................... 3, 5, 6, 7

*Bright Tunes Music Corp. v. Harrisongs Music Ltd.*,
   420 F. Supp. 177 (S.D.N.Y. Aug. 31, 1976) ....................................... 1

*Childress v. Taylor*,
   945 F.2d 500 (2d Cir.1992) .............................................................. 10

*Cook, Perkiss and Liehe v. Northern California Services, Inc.*,
   911 F.2d 242 (9th Cir. 1990) .............................................................. 2

*Drive-In Music Co., Inc. v. Sony Music Ent.*,
   2011 WL 13217236 (C.D. Cal. Apr. 18, 2011) ................................... 7

*Eckes v. Card Prices Update*,
   736 F.2d 859 (2d Cir. 1984) ............................................................ 10

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) .......................................................... 11

*Kev & Cooper LLC v. Furnish My Place LLC*,
   2022 WL 2161997 (C.D. Cal. Mar. 15, 2022) .................................... 8

*Newton v. Diamond*,

    388 F.3d 1189 (9th Cir. 2004) ............................................................................. 3

*Park v. Thompson*,

    851 F.3d 910 (9th Cir. 2017) ............................................................................... 2

*Perfect 10, Inc. v. Amazon.com, Inc.*,

    508 F.3d 1146 (9th Cir. 2007) ........................................................................... 13

*Pryor v. Jean*,

    2014 WL 5023088 (C.D. Cal. Oct. 8, 2014) ....................................................... 7

*Scott v. Walt Disney Co.*,

    2021 WL 1557744 (C.D. Cal. Mar. 30, 2021) .................................................... 8

*Swierkiewica v. Sorema N.A.*,

    534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) .......................................... 2

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.*,

    630 F.3d 1255 (9th Cir. 2011) ............................................................................. 8

*United States v. Taxe*,

    540 F.2d 961 (9th Cir. 1976) ............................................................................... 7

*VMG SalSoul LLC v. Ciccone*,

    824 F.3d 871 (9th Cir. 2016) ...................................................................... 3, 5, 6

**Statutes**

17 U.S.C. § 101 ............................................................................................................ 3, 7

17 U.S.C. §106(2) ............................................................................................................. 5

17 U.S.C. § 114(b) ............................................................................................................ 6

17 U.S.C. § 201(a) .......................................................................................................... 10

17 U.S.C. § 204(a) ...................................................................................................... 9, 10

17 U.S.C. § 410(c) ............................................................................................................ 9

*Copyright Act* ........................................................................................................... 11, 12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2, 8

1    Now comes Plaintiff, Daniel E. Grigson, ("Grigson"), in opposition to

2    Defendants' Motion to Dismiss and for a More Definite Statement (ECF No. 43).

3    Such Motion must be denied for at least the following reasons.

4    **I.    Introduction**

5    In their Introduction, Defendants go to great lengths characterizing

6    Defendants Robert Lopez and Kristen Anderson-Lopez as "two of the music

7    industry's brightest shining songwriters." ECF No. 43 at 1:3-4. Plaintiff Grigson

8    is similarly an outstanding songwriter, with particular awards for international

9    work with children around the world, as set forth in detail in the nine subparagraphs

10   (a-i) of ¶29 of his First Amended Complaint. *See* ECF No. 36. But, character,

11   competency, and even intent are not issues in this matter.   Notably, George

12   Harrison, of Beatles fame, was found to be an infringer notwithstanding the

13   absence of any bad faith or intent. *Bright Tunes Music Corp. v. Harrisongs Music*

14   *Ltd.*, 420 F. Supp. 177, 180 (S.D.N.Y. Aug. 31, 1976).  Infringement of a copyright

15   is no less so even though subconsciously accomplished.  *Id.* (citing *Sheldon v.*

16   *Metro-Golden Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936) and *Northern Music*

17   *Corp. v Pacemaker Music Co., Inc.,* 1965 WL 7788 at *1 (S.D.N.Y. 1965)).

18   As to copying, Defendants' Introduction advances "the only remotely

19   similar musical elements between the two songs are commonplace, unprotectable

20   musical building blocks present in enumerable songs." ECF No. 43 at 1:10-13. Yet,

21   Mr. Grigson's expert, Dr. Robert Tomaro, an experienced forensic musicologist

22   and symphonic conductor, performed multiple analyses on the two songs in issue

23   (ECF No. 36 at ¶¶ 49-59) and concluded, "given the foregoing, the similarities in

24   the songs are so striking that they can only be explained by copying" (*Id.* at ¶ 58).

25   The foregoing aside, the issue here, as presented in Defendants' Motion

26   (ECF No. 43) is whether the First Amended Complaint (ECF No. 36) states

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

plausible counts of copyright infringement and rights of recovery.  As apparent on its face and presented below, it does.

## II.   Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Grigson's Sound Recording Infringement Claims

### A.   Standard of Review—Motion to Dismiss

Defendants ask the court to dismiss Grigson's sound recording infringement claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, a court must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555); *see also*, *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Plaintiff, as non-movant, is entitled to all reasonable inferences.  Park, 851 F.3d at 918.  The question presented by a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether the plaintiff is entitled to offer evidence in support of its claim. *Swierkiewica v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  It is not whether the plaintiff can prevail in the action.  *Id.*

If the court is determined to dismiss the First Amended Complaint, then it must then decide whether to grant leave to amend.  *Cook, Perkiss and Liehe v. Northern California Services, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  A district court should grant leave to amend even if no request to amend the pleadings is made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.  *Id.*

### B.   Infringement of a Copyrighted Sound Recording

When considering claimed infringement of a copyrighted sound recording, what matters is how the musician *played* the notes, that is, how the musician's rendition distinguishes the recording from a generic rendition of the same composition. *VMG SalSoul LLC v. Ciccone*, 824 F.3d 871, 879 (9th Cir. 2016). (Emphasis in original.)  The protected elements of a copyrighted sound recording are those ***elements unique to the musician's performance***.  *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004).  A sound recording is not merely the technical capture of live sounds by recording engineers, but rather a work that results from the fixation of a series of musical, spoken or other sounds.  17 U.S.C. § 101.  In other words, the "actual sounds" of a sound recording include the underlying musical performance and musical sounds.

When a defendant copies a recording, he or she takes the sounds as they are fixed in the medium of the copyright holders' choice.  *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 801-802 (6th Cir. 2005).  The factual allegations advanced in the First Amended Complaint in support of the claim that the copyrighted sound recording of "That Girl" has been infringed are legion.  Below is a sampling of relevant factual contentions, identified by paragraph from the First Amended Complaint:

¶46: When "GRIGSON first heard the song 'Some Things Never Change' … he involuntarily stood straight up, turned to look at his wife, and then at his kids, his eyes wide open as saucers … it caught him off guard, the beat, rhythm, feel, theme … His 11-year old daughter leaned over to him and said 'Dad, Disney took your song.'"

¶¶47-48: "GRIGSON … located a version of 'Some Things Never Change' with music only and he transposed 'That Girl' down 2 steps to match keys.  He did not alter anything else.  Not the rhythm.  Not the tempo.  Not the cords.  Nothing was added.  To him, the musical similarity was striking … similarity in the structure and lyrics."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

¶¶49-59: This portion of the First Amended Complaint advances the findings of "an experienced forensic musicologist, Dr. Robert Tomaro, a symphonic conductor … with experience … in guitar performance as a professional guitarist, [who] was retained to perform a comparative analysis of 'That Girl' versus 'Some Things Never Change.' (¶ 49). Dr. Tomaro performed a 'Recording Analysis'… 'Compositional Analysis' … 'a Temporal or Timeline Analysis' … 'and an Audio Analysis.'" (¶ 50). He "found 8 significant similarities shared by 'That Girl' and 'Some Things Never Change.'" (¶ 51). His analysis is extremely detailed, showing by way of example: "Each chorus has the same or similar words that appear in the same order in each chorus … have identical song structure in terms of arrangement of sections … follow the same rhythm, beat, and tempo, especially noted in the nearly identical acoustic guitar underlying the majority of both songs …. [and] the tempo and rhythm are so similar they kept time and rhythm without alterations." (¶ 53). Continuing with ¶ 54, striking identities and similarities are noted in detail. At ¶ 55, speaking of cadence, Dr. Tomaro found "that a similar cadence occurs simultaneously in both [songs] at the same point in their respective recordings, and that other striking similarities exist in both cadences, as well … the instrumental accompaniment also pauses and a chord is struck and held for a full bar in both songs … These cadential passages are a unique and catchy feature of both songs, and the fact that both songs share 5 distinct similarities at the same place and in the space of a brief, two-bar phrase, it [was] opined by forensic musicologist, Dr. Tomaro, as significant."

At ¶ 56, at subparagraph (h), by way of example, "the rhythmic structure of the acoustic guitar parts of both songs are identical; the bass parts are quite similar; the drum parts are quite similar; the tempos of both songs are identical (quarter note = 92 BPM); and beats 1 and 3 in both recordings are accented by the rhythm section which creates a 'bouncy' folk rock style pulse that supports the mood of the song and the theme of the lyrics." At ¶ 58, Dr. Tomaro advanced that **"Given the foregoing, the similarities in the songs are so striking that they can only be explained by copying …."** (emphasis added).

*See* ECF No. 36.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

1       Throughout the various counts of the First Amended Complaint, the

2  copyright violation to Plaintiff's continuing damages are set forth in detail.  These

3  allegations are directed ***not*** just to the musical composition but also to elements

4  unique to Grigson's performance (*i.e.*, the sound recording).

5       In Paragraph 83, Defendants are charged with having "violated

6  GRIGSON'S exclusive right to prepare derivative works without his consent,

7  license, or permission," and reasserts the violation of that exclusive right is

8  reasserted in Paragraph 84. ECF No. 36.  In Paragraph 94 it is advanced that

9  "certain sounds were re-recorded or re-played from GRIGSON'S song into

10  DEFENDANTS' song." *Id*. The fact that "GRIGSON had and has the exclusive

11  right to prepare derivative works of the sound recording for 'That Girl' and be

12  compensated therefore, per 17 U.S.C. §106(2)" is advanced at ¶ 101. *Id*.

13       Defendants rely on *Bridgeport* and the partial statement of Paragraph 94 of

14  the First Amended Complaint, "[w]hile it is not known if the actual sounds from

15  'That Girl' are used in the song 'Some Things Never Change,'" to have the Court

16  dismiss Plaintiff's claim of copyright infringement of its sound recording out of

17  hand. ECF No. 43 at 4:12-5:8. Without discovery, it simply cannot be known to

18  Plaintiff if actual sounds were used.  But, it can be known, as was endorsed by the

19  Ninth Circuit in *VMG Salsoul,* by comparing the recordings of the songs, whether

20  there are similarities such that a reasonable juror could conclude that an audience

21  would find that to be the case. *VMG SalSoul*, 824 F.3d at 878, 880.  Hence, the

22  remainder of the statement of Paragraph 94 of the First Amended Complaint,

23  "certain sounds were re-recorded or replayed from GRIGSON'S song into

24  DEFENDANTS' song," is directly on point.

25       Contrary to Defendants' assertions, Plaintiff's allegations that "sounds"

26  being "re-recorded" or "re-played" from "That Girl" into "Some Things Never

27  Change" do take Grigson's claim for copyright infringement of its sound recording

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

from implausible to plausible.  First, Defendant's argument is based upon a narrow reading of *Bridgeport*.  The Sixth Circuit in *Bridgeport* expressly states in footnote 13 "the only way to infringe a sound recording is to ***re-record*** sounds from the original work."  *Bridgeport*, 410 F.3d at n. 13 (emphasis added).  And, in footnote 18, the Sixth Circuit states one reading of 17 U.S.C. § 114(b) is that "a sound recording containing any sound of another recording would constitute an infringement." *Id*. at n. 18.

Second, while the Ninth Circuit in *VMG Salsoul, LLC v. Ciccone,* 824 F.3d at 880, rejected the contention that the mere use of any sound of another recording would constitute an infringement, it defined the issue as whether a reasonable juror, after listening to both recordings, could conclude that an average audience would recognize an appropriation of actual sounds.  The facts pled by Grigson as to the similarity of sounds between the songs, particularly as to similarity in the guitar riff, strategically ignored by Defendants, make it plausible that a reasonable juror could so conclude there was an appropriation of actual sounds.

Nor is it necessary that the pleaded similarities be exact.  The Sixth Circuit in *Bridgeport* further stated:

> [T]he copyright law specifically provides that the owner of copyright in a sound recording has the exclusive right to prepare a derivative work 'in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality.'  A recording that embodies samples taken from the sound recording of another is by definition a 'rearranged, remixed, or otherwise altered in sequence or quality.'

*Bridgeport*, 410 F.3d at 804. Thus, not just the taking of sounds from another recording can constitute an infringement, but also rearrangement of sounds from a sound recording by another (*i.e*., a derivative work), will constitute an infringement of the original.

As to the quote relied upon by Disney from *Bridgeport* as negating Grigson's claim for copyright infringement of his sound recording, that quote refers to the "***independent fixation by another of other sounds similar to those copyrighted,***" as not constituting an infringement. ECF No. 43 at 5:17-18. But, Plaintiff's claim alleges that fixation by Defendants was not "independent," but rather the result of being "re-recorded" or "re-played" by Defendants from "That Girl," as well as "not being of other sounds similar to those copyrighted," but of the same sounds—particularly as to guitar sounds at the outset of the two songs. ECF No. 36 at ¶¶ 53(a), 56(h), 94.  As such, Plaintiff's claim is ***not*** implausible. Sounds that "imitate or simulate" are not "re-recorded" nor "re-played" sounds, but those are not the sounds at issue here.

In *Pryor v. Jean,* 2014 WL 5023088 (C.D. Cal. Oct. 8, 2014), cited by Defendants (*see* ECF No. 43 at 1:23-2:1, 4:25-5:1), the district court applied a narrow definition of "a sound recording" as being merely the technical capture of live sounds by a recording engineer.  But that is not justified under 17 U.S.C. §101 in finding defendants used only "actual sounds" from an authorized remaster (i.e., derivative).  In other words, a sound recording is a work which results from the fixation of a series of musical, spoken, or other sounds (i.e., the musical performance).

As to *United States v. Taxe*, 540 F.2d 961, 965 (9th Cir. 1976) and *Drive-In Music Co., Inc. v. Sony Music Ent.,* 2011 WL 13217236 (C.D. Cal. Apr. 18, 2011), also cited by Defendants (*see* ECF No. 43 at 5:9-23), they fail to support Defendants' position for the same reason as the quote from *Bridgeport* cited by Defendants—the exclusive right to duplicate saves only "independent fixation," not "re-recording" or "replaying" sounds into a copy.  *Taxe* and *Drive-In Music Co.* are not generally supportive of the pronouncement relative to copyright protection afforded a sound recording because, while the reproduction right of a

copyright holder is limited, another can infringe by making changes in the duplicated sounds (*i.e.*, a derivative).

### III.  Plaintiff States Sufficient Facts From Which It is More Than Plausible That He Has An Ownership Interest In The Sound Recording Copyright

Defendants would next have the sound recording claim dismissed under Rule 12(b)(6) arguing that the sound recording registration is invalid on its face. Defendants' argument is without merit.

To begin, a copyright registration is *prima facie* evidence of the validity of the copyright and the facts stated in the certificate.  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.,* 630 F.3d 1255, 1257 (9th Cir. 2011).  Defendants' challenge to the validity of the sound recording copyright poses a merit question inappropriate for resolution at the pleadings stage.  *Kev & Cooper LLC v. Furnish My Place LLC*, 2022 WL 2161997 at \*1 (C.D. Cal. Mar. 15, 2022).

Next, the facts in this case are not akin to those in *Scott v. Walt Disney Co.*, 2021 WL 1557744 (C.D. Cal. Mar. 30, 2021), which Defendants proudly cite as having been dismissed (*see* ECF No. 43 at 7:16-24), nor in the additional cases they cite.  Particularly, the Plaintiff in *Scott* was the sole owner of a copyright.  He had acquired no ownership interest separate and apart from that associated with his authorship.  Grigson alleges ownership both as a co-author and as an assignee.

Notwithstanding, Defendants claim that Grigson had no right to apply for the SR registration because he had no ownership rights in the sound recording at the time he applied, having not disclosed it in bankruptcy proceedings some seventeen years earlier.  Defendants' argument ignores the following:

(1) that Grigson has attached to the First Amended Complaint a timely obtained Copyright Office certificate of registration, which constitutes

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

*prima facie* evidence of the validity of the copyright under 17 U.S.C. § 410(c);

(2) additional key facts evident from the face of the First Amended Complaint; and

(3) further facts of which the Court can take judicial notice:

- Grigson was one of two authors of the sound recording;
- the very language and the instructions of the form to register for a SR copyright provide, "if the claimant is ***not*** the author the application for registration must contain 'a brief statement of how the claimant obtained ownership of the copyright. Grigson did not cease to be a co-author because he declared bankruptcy some seventeen years earlier, even if his interest in the copyright registration that would subsequently issue would inure to the bankruptcy estate;
- the SR registration in issue lists Grigson and Byrant as co-authors of the sound recording; and
- Grigson received Byrant's ownership interest as memorialized by the assignment signed four days after the application to register the copyright was filed. That assignment on its face includes both ***registered and unregistered*** copyrights, including expressly in the sound recording, as well as rights of action for infringement occurring prior to the assignment date. An oral assignment may be confirmed later in writing. In *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir. 1994), the court recognized that "17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by a written memorandum of the transfer."

Further, as a matter of law:

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

- It is of no legal consequence that the assignment from Grigson's coauthor occurred four days after the filing of the application for registration by Grigson.   As a co-author Grigson could apply for copyright registration, and the benefit of registration would inure to both co-authors as both are listed as such.  Joint authors are co-owners of copyright in the work.  § 201(a))  Co-ownership constitutes partial ownership of the entire copyright in the work as well as other rights of authorship.  *Childress v. Taylor,* 945 F.2d 500, 505 (2d Cir.1992); and

- "Only the 'knowing failure to advise the Copyright Office of ***facts which might have occasioned a rejection of the application*** constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action…'" *Eckes v. Card Prices Update,* 736 F.2d 859, 861–862 (2d Cir. 1984).

- The chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership. The court went on to say that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F3d 586, 593 (7th Cir. 2003) (citing in part *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)).

By presentation of the SR registration, statement of further facts and attached assignment document, Grigson states a plausible claim of ownership in the sound recording.  Defendants' claim for dismissal on this basis must be denied.

**IV.  Grigson's "Remaining Counts" State Plausible Claims for Direct Copyright Infringement As to All Defendants and Indirect Copyright Infringement in The Alternative As to Defendants The Walt Disney Company, Disney Enterprises, Inc., Hollywood Records, Inc. and Disney DTC, LLC**

Defendants would have the court dismiss Grigson's counts directed to the copyright infringement of the sound recording and require Grigson to restate the balance of his counts.  Plaintiff has addressed why the former should not be dismissed above.  Plaintiff now addresses why the remaining counts of the First Amended Complaint are neither "disorganized" nor "incoherent," and do not require restatement.

In the First Amended Complaint, Grigson has pleaded facts supporting a plausible claim that all Defendants are liable for direct copyright infringement.  Those same pleaded facts also support a plausible claim for indirect copyright infringement against Defendants, The Walt Disney Company, Disney Enterprises, Inc., Hollywood Records, Inc. and Disney DTC, LLC.

The Ninth Circuit recognizes three doctrines of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). A direct copyright infringement claim requires a showing of ownership of a copyright and that the defendant himself violated ***one or more of the plaintiff's exclusive rights under the Copyright Act***. *Id.* (citing *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).  Counts II-V specify each exclusive right held by Grigson as a copyright owner that the conduct described in the preceding paragraphs violates.  Violation of ***any one*** of those exclusive rights ***separately*** would constitute direct copyright infringement of Grigson's musical composition.  There is no reason to consolidate them as a single count.

A contributory copyright infringement claim includes those who have reason to know of the direct infringement. *Id.* (citing *Napster*, 239 F.3d at 1020). Vicarious copyright infringement includes enjoyment of a direct financial benefit from another's infringing activity where the defendant has the right and the ability to supervise the infringing activity. *Id.* (citing *Napster*, 239 F.3d at 1022).

Looking at the allegations in the First Amended Complaint, Paragraph 108 is directed to a statement of fact relating to contributory copyright infringement:

> "108.    DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and JOHN DOES, individually and collectively, knew or had reason to know at least based on the public statement of R LOPEZ that he listened to YouTube for inspiration, or acted with reckless indifference as to whether their own conduct, constituted copyright infringement, and therefore materially contributed to and otherwise facilitated the unauthorized exploitation of 'That Girl' and the creation and monetization of 'Some Things Never Change.'"

ECF No. 36. Paragraph 109 of the First Amended Complaint is directed to a statement of fact relating to vicarious copyright infringement:

> "109.    DEFENDANTS, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., HOLLYWOOD RECORDS, INC., and DISNEY DTC, LLC, directly and indirectly through one or more of their AFFILIATES and JOHN DOES, individually and collectively, through their inducement, causation and assistance in the direct copyright infringement alleged herein, have profited, and continue to profit."

*Id.* The remaining paragraphs are statements of damages incurred by Grigson due Defendants' direct and indirect copyright infringement and alternative remedies sought.

1    ***Both contributory copyright infringement and vicarious copyright***

2    ***infringement require proof of direct copyright infringement by another.***  *Perfect*

3    *10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170, 1173 (9th Cir. 2007).  Thus,

4    there are necessarily facts common to all three doctrines of copyright liability if all

5    are asserted, as here.

6           The paragraphs of the First Amended Complaint are neither "disorganized"

7    nor "incoherent." They are statements consistent with the required proofs.

8    **V.    Conclusion**

9           The extensive factual assertions of the First Amended Complaint support a

10   plausible claim for copyright infringement of the sound recording "That Girl."

11          The challenge to the validity of the sound recording copyright registration

12   is premature.  Notably, such registration is *prima facie* evidence of the validity of

13   the copyright itself.  Accordingly, such a challenge is inappropriate for resolution

14   at the pleadings stage, particularly here, because Plaintiff Grigson was and remains

15   a coauthor of the sound recording copyright.  While his original interest may

16   remain in the bankruptcy estate, he received the separate interest of his coauthor

17   by assignment 17 years after that bankruptcy.  He thereby has the legal right to

18   bring this action as the owner thereof.

19          The First Amended Complaint is well organized and coherent when

20   considering the required proofs for direct and indirect infringement.  The claims

21   advanced are alternate theories of liability as against the various individual

22   defendants and are advanced in an orderly and cohesive manner.

23          Should the Court disagree with any of the foregoing, Plaintiff should be

24   granted leave to amend.

25

26

27

28

Dated:  April 12, 2023

Respectfully submitted,

_____/s/ Melenie Van_____

Melenie Van
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Tel:     (310) 229-1355
Fax:     (415) 276-8959
Email: mvan@polsinelli.com

Ray L. Weber (admitted *pro hac vice*)
Laura J. Gentilcore (admitted *pro hac vice*)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Tel:     (330) 376-1242
Fax:     (330) 376-9646
Email: rlweber@rennerkenner.com
Email: ljgentilcore@rennerkenner.com

*Attorneys for Plaintiff DANIEL E. GRIGSON*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT
Case No. 2:22-cv-07971-RAO

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S**

3

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO**

4

5

**FED.R.CIV.P. 12(b)(6) AND FOR A MORE DEFINITE STATEMENT**

6

**UNDER FED.R.CIV.P.12(e)** has been filed electronically on April 12, 2023, with

7

the United States District Court for the Central District of California. Notice of the

8

9

filing will be sent to all parties by operation of the Court's electronic filing system.

10

Parties may access this filing through the Court's system.

11

12                                        */s/ Melenie Van*

13                                        Melenie Van

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28